William **MOORE**, Appellant,

v.

Nancy **GRANTHAM**, Appellee.

No. 1232.

Court of Civil Appeals of Texas, Tyler.

April 5, 1979.

Rehearing Denied April 27, 1979.

Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellant.

William O. Whitehurst, Jr., Kidd & Whitehurst, Austin, for appellee.

SUMMERS, Chief Justice.

This case arose from a collision which occurred on February 19, 1975, when an automobile driven by William Moore, defendant below, struck the rear of an automobile driven by Nancy Grantham, plaintiff below. Plaintiff sustained personal injuries as a result of the collision, primarily to her neck and knee. This suit was filed by plaintiff seeking to recover for those personal injuries.

The case was tried to a jury. In response to special issues submitted, the jury found that defendant was negligent by failing to keep a proper lookout and by failing to control his speed and that such negligence was a proximate cause of the occurrence in question. (Special Issue No. 1) In addition, the jury found that defendant failed to maintain an assured clear distance between his vehicle and the vehicle driven by Nancy Grantham and that such failure was a proximate cause of the occurrence in question. (Special Issues Nos. 2 and 3) No attack is directed against the above findings by appellant in this appeal.

The jury awarded plaintiff $865.79 for the cost of past medical care, $2,197.40 for past loss of earnings, $2,500.00 for physical pain and mental anguish suffered in the past, $3,000.00 for the cost of medical care which in reasonable probability will be sustained in the future, $8,413.25 for physical pain and mental anguish which in reasonable probability will be suffered in the future, and $39,600.00 for loss of future earning capacity. (Special Issue No. 4) The trial court entered judgment against defendant on the basis of the jury's verdict for a total of $56,576.44. From this adverse judgment, defendant has perfected this appeal predicated upon eight points of error. The primary target of appellant's attack is the jury's award of $39,600.00 for loss of future earning capacity.

Prior to the accident here in question, appellee was a trained and experienced interior designer. After graduation from high school, she was employed in a variety of clerical positions. In an effort to train herself for a higher paying profession, appellee enrolled in a home-study program in interior decorating design offered by the LaSalle Extension University. She completed the program in two years and was then employed as a designer apprentice by Environmental Design Group, primarily involving commercial interior design. During the two years she worked as a designer apprentice appellee took some additional college level courses in art and print making. In 1972, she went to work at The Denmark Shop in Austin, Texas, a furniture and home accessories store, as an interior designer. After being employed at The Denmark Shop for almost one year, appellee left to attempt to establish her own interior design firm. She described this move as a risk which she had felt would eventually pay off.

During her testimony, appellee described some of the physical activities which were involved in interior design work. These activities included taking measurements to set up floor plans, drawing floor plans and potential designs, supervision of painting and carpet installation, and rearranging furniture. She testified that often an interior designer gets in the act of painting, packing, and unpacking. In addition, she testified that her duties required a great deal of driving in order to hunt for and purchase items for her clients' homes. Two of appellee's former clients also testified concerning the activities which they had observed her performing in the course of her employment as an interior designer. These activities included carrying in items, potting plants, rearranging furniture, hanging draperies, climbing up and down lad-

ders, and painting. The rates which appellee had charged these clients for her services ranged from $20.00 to $30.00 per hour.

Subsequent to the accident here in question, appellee testified that she had attempted to return to interior design work. However, due to the injuries she had sustained to her neck and knee, these attempts were unsuccessful. Appellee was unable to accept other interior design jobs which were available because of the limitations imposed upon her by her injuries and the advice of Dr. Louis W. Breck, an orthopedic surgeon. Finally, appellee testified that she was presently employed as an assistant manager in a retail store for $600.00 per month. Her present duties include supervision of employees and outside sales.

Dr. Breck, an orthopedic surgeon to whom appellee had been referred by another physician, testified by deposition. He testified that he took appellee's history and gave her a thorough examination, including x-rays. He noted that her subjective complaints were consistent with this type of neck and knee injuries and were confirmed by his objective findings. Upon examination of appellee's neck, Dr. Breck said he found muscle spasm at the base of her neck and stiffness which resulted in a 50% loss of movement. In addition, Dr. Breck testified that x-rays exhibited a narrowing of the disc space and formation of osteophytes as a result of the injury. He explained that osteophytes were new bone growths resulting from bone injury which could produce artificial stiffening, pain, and were progressive in nature in the sense that it would continue to get worse. Dr. Breck also analyzed x-rays of appellee's knee and concluded that she suffered from chrondromalacia of the patella and sclerosis of the back surface of the patella. These injuries result from blunt force or trauma to the knee and are painful when the knee is stressed.

Dr. Breck thoroughly discussed the limitations and restrictions he had placed upon appellee in regards to her activities and work. The appellee was to treat her knee with "tender loving care" and avoid stress. She should avoid all athletic activity which would stress the knee such as skiing and most ball games. By all means, she should avoid going up and down stairs any significant amount. Her employment should be limited to light work for the rest of her life. A limited amount of standing would be alright, but any stooping or bending down would be out due to both her knee and neck injuries. Her neck injury also produced some marked limitations. She cannot look up above eye level, turn her head around to drive a car in reverse, or sit for a prolonged period of time working over a desk or drawing board. Dr. Breck concluded that appellee will experience pain in the future as a result of both injuries which will be permanent and gradually worsen. He estimated that appellee suffered a permanent disability of the body as a whole of 20% due to both injuries together. In addition, appellee will probably require knee surgery in the near future.

The final witness called to testify by appellee was Dr. Carl E. Hansen, director of the Rehabilitation Counsellor Education Program and a professor of vocational rehabilitation counselling at the University of Texas. Dr. Hansen was called as an expert witness primarily for the purpose of receiving his opinion as to the appellee's loss of future earning capacity. The admissibility of Dr. Hansen's opinion is the primary issue raised by this appeal.

Dr. Hansen testified that an interior designer in Austin, Texas, with 3–5 years experience would be in the $700.00 per month salary range for an entry level position. The state-wide average for an interior designer which such experience would be approximately $900.00 per month. He noted that appellee was currently employed as an assistant manager of a retail store for $600.00 per month. While so employed as an assistant manager, appellee could expect to earn a total of $235,200.00 over her working career expectancy of 32 years, 8 months. Work career expectancy was distinguished from life expectancy in that working career expectancy cuts off at age 65. Dr. Hansen compared this with the total earnings she could expect to earn if

she were able to compete in the interior design field. Calculating on the basis of the $700.00 to $900.00 per month salaries previously discussed, Dr. Hansen testified that an interior designer could expect to earn $274,400.00 to $352,800.00 over a working career of 32 years, 8 months. The differential over the appellee's future working career, based upon the figures above, would be $39,200.00 to $117,600.00. Therefore in Dr. Hansen's opinion, based upon the interior design decorator jobs at $700.00 per month, appellee's loss of future earning capacity was $39,200.00.

The basis of Dr. Hansen's opinion was the subject of a great deal of discussion in the lower court. Dr. Hansen testified that a vocational evaluation basically involves a review of the person's background through an interview process. Information concerning the person's education, prior work experiences, and their medical disability or limitations is gathered. In connection with the instant case, Dr. Hansen relied upon such sources as a two hour interview with the appellee, a review of correspondence from Dr. Breck and Dr. Breck's deposition, and correspondence from appellee's former employers and clients. In addition to these sources, Dr. Hansen had an interview with Dr. Brightman, a University of Texas home economics professor specializing in interior design and did some research in the area of Manpower and Department of Labor surveys and statistics. Dr. Hansen explained that his training and expertise enabled him to take such information as surveys, statistical data, job occupations, and the transferability of skills from one occupation to another and reach an opinion as to the vocational limitations imposed upon the person by the medical disability and the person's resulting capabilities in the labor market. It is important to note that Dr. Hansen testified that the sources which he utilized in the present case were those upon which he customarily relied in the practice of his profession and were customarily relied upon by other experts in this field.

■ Appellant's points of error Nos. 1–4 complain that the trial court erred in admitting into evidence Dr. Hansen's opinion of appellee's loss of future earning capacity because the opinion was based entirely upon hearsay, it was opinion based upon opinion, it was not a subject for which expert opinion was proper, and the witness failed to testify in response to hypothetical questions and assumed facts not in evidence. No complaint is raised on appeal that Dr. Hansen was not qualified to testify as an expert in vocational rehabilitation. The sole question with which we are presented is whether it was proper for the trial court to receive this witness' opinion in evidence. The trial court is necessarily given wide discretion in determining whether a qualified expert's opinion will be admitted into evidence and the trial court's decision will not be disturbed on appeal unless a clear abuse of discretion is shown. *Texas Sanitation Company v. Marek*, 381 S.W.2d 710, 716 (Tex. Civ.App.—Corpus Christi 1964, n. w. h.); *Urquhart v. Barnes*, 335 S.W.2d 666, 669 (Tex.Civ.App.—Fort Worth 1960, n. w. h.); 23 Tex.Jur.2d, Evidence, Section 411, p. 615.

We will first address appellant's point of error no. 1 which contends that Dr. Hansen's opinion was inadmissible because it was wholly based on hearsay. This is a question with which the courts have long wrestled, not always reaching consistent answers. In the past, Texas courts have applied a strict rule holding an expert's opinion inadmissible if any portion of the basis of such opinion was hearsay. McCormick and Ray, Texas Law of Evidence, section 1404, p. 242 (2d Ed. 1956). The application of this rule, however, has not always been uniform. For example, a distinction was drawn between the permissible basis of a treating physician and a nontreating physician. *Texas Employers' Insurance Association v. Morgan*, 187 S.W.2d 603, 605 (Tex. Civ.App.—Eastland 1945, ref'd w. m.). A much more liberal rule was applied in cases involving opinion testimony of property valuation experts. *State of Texas v. Oakley*, 163 Tex. 463, 356 S.W.2d 909 (1962); *Cole v. City of Dallas*, 229 S.W.2d 192 (Tex.Civ. App.—Dallas 1950, ref'd n. r. e.).

■ All expert testimony is of necessity significantly based upon hearsay. A properly trained expert must base his expertise, in large part, on information and skills he has learned from his teachers and textbooks. It is the very ability to utilize the training so derived that qualifies him to be an expert. The fact that an expert's opinion is based, in large part, upon books, treatises, published and unpublished reports, and other such sources does not necessarily render the opinion inadmissible. *Coffee v. William Marsh Rice University*, 408 S.W.2d 269, 285 (Tex.Civ.App.—Houston 1966, ref'd n. r. e.); *Texas & Pacific Railway Company v. Porter*, 360 S.W.2d 568, 572 (Tex.Civ.App.—Eastland 1962, ref'd n. r. e.); *Urquhart v. Barnes*, supra; *Schooler v. State*, 175 S.W.2d 664, 670–1 (Tex.Civ.App.—El Paso 1943, ref'd w. m.). The recent trend has been to recognize that complaints of the nature of the one raised in the instant case should be considered more as questions of weight as opposed to questions of admissibility.

■ Once the expert is qualified, a primary question regarding the admissibility of his opinion is whether the basis of the opinion and the sources of information relied upon by the expert are of the type reasonably and customarily relied upon by experts in that particular field in forming their opinions. *Slaughter v. Abilene State School*, 561 S.W.2d 789, 791 (Tex.Sup.1977); *Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186–7 (Tex.Sup.1972); *United States Fire Insurance Company v. Stricklin*, 556 S.W.2d 575, 580 (Tex.Civ.App. —Dallas 1977, ref'd n. r. e., *Stricklin v. U. S. Fire Ins. Co.*, Tex., 565 S.W.2d 43); *Texas & Pacific Railway Company v. Porter*, supra. One of the commentators noted with approval by the Supreme Court in *Slaughter* states:

"It is reasonable to assume that an expert in a science is competent to judge the reliability of statements made to him by other investigators or technicians.

\* \* \* \* \* \*

"If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand . . . ." McCormick, Evidence, section 15, pp. 35, 36 (2d Ed.1972).

The expert may not rely on just *any* hearsay, but where the source of the information or basis of the opinion is of a type upon which the expert and others within his profession customarily rely, it should be a sufficient basis to justify the admission of his professional opinion into evidence.

■ In the instant case, we do not believe Dr. Hansen's opinion was based solely upon hearsay. However, the basis of the witness' opinion was of the type commonly relied upon by experts in the field of vocational rehabilitation. We find no abuse of discretion on the part of the trial court in admitting Dr. Hansen's opinion over appellant's objection that it was entirely based upon hearsay. Appellant's first point of error is overruled.

■ Appellant's second point of error contends that the trial court erred in admitting Dr. Hansen's opinion because it was an opinion based upon opinion. The thrust of appellant's argument is that Dr. Hansen based his opinion upon the opinions of Dr. Breck, the physician, and Dr. Brightman, a home economics professor, and therefore Dr. Hansen's opinion was inadmissible and of no probative value. We believe the cases cited by appellant in support of his position to be inapposite to the instant case.

Dr. Breck's testimony described the functional or medical limitations suffered by appellee as a result of the occurrence here in question. These functional limitations, discussed previously in this opinion, were distinguished from the vocational limitations which were discussed by Dr. Hansen. Dr. Hansen stated that he was neither a physician nor was he attempting to give an opinion concerning appellee's medical diagnosis. In reaching his conclusion as to the vocational limitations suffered by plaintiff, Dr. Hansen utilized the functional limita-

tions as described by Dr. Breck in his testimony. Therefore, Dr. Hansen's opinion was based, in part, on facts previously admitted into evidence, and this was made clear to the jury who had the opportunity to judge the credibility of both witnesses and the weight to be accorded to their testimony. The record fails to show that Dr. Hansen based his opinion on any alleged opinion given to him by Dr. Brightman.

An expert may base his opinion on his own observation of the facts, on an assumed state of facts which the evidence tends to establish, on competent evidence in the case, or partly on facts within his own knowledge and partly on facts shown by the testimony of others. *Texas State Highway Department v. Fillmon*, 150 Tex. 460, 242 S.W.2d 172, 175 (1951); *Pan American Fire and Casualty Company v. Reed*, 436 S.W.2d 561, 564 (Tex.Civ.App.—Amarillo 1968, ref'd n. r. e.). The basic facts upon which the expert's opinion is based may be adduced into evidence by the expert himself or by other witnesses. We believe appellant's second point of error is without merit and hereby overruled.

Appellant's third point of error argues that the trial court erred in receiving into evidence Dr. Hansen's expert opinion regarding loss of future earning capacity because it was not a subject for which opinion evidence was proper. It is appellant's contention that the witness was in no better position than the jury to arrive at the ultimate conclusion. We disagree.

In considering whether to receive into evidence an expert's opinion, it must appear to the trial court

"(1) that the subject is so related to some science, profession or business as to be beyond the knowledge of average laymen, and (2) that the witness offered has such skill, knowledge or experience in the particular field to make it probable that his opinion will be of assistance to the trier in the factual determination." McCormick and Ray, supra at section 1400.

The trial court has broad discretion in determining whether the subject matter of the expert opinion is admissible. *Burns v. Bridge Engineering Corporation*, 465 S.W.2d 427, 432 (Tex.Civ.App.—Houston [14th Dist.] 1971, ref'd n. r. e.). In a personal injury suit, the amount of damages resulting from loss of future earning capacity is by necessity a matter left to the sound judgment and discretion of the jury. However, the jury may not be left to mere conjecture; it must be an intelligent decision based upon the available facts. *King v. Skelly*, 452 S.W.2d 691, 693 (Tex.Sup. 1970). The plaintiff has the burden to prove the amount and the extent of such damage.

No objection to the qualifications of Dr. Hansen as an expert was raised by appellant, therefore the only question before us is whether loss of future earning capacity is a proper subject for opinion testimony by a qualified expert. The propriety and efficacy of such expert testimony has been recognized by Texas courts. *Texas Steel Company v. Recer*, 508 S.W.2d 889 (Tex.Civ.App.—Fort Worth 1974, ref'd n. r. e.); *Williams v. General Motors Corporation*, 501 S.W.2d 930 (Tex.Civ.App.—Houston [1st Dist.] 1973, ref'd n. r. e.). We find no abuse of discretion on the part of the trial court in receiving expert opinion testimony regarding loss of future earning capacity and appellant's third point of error is overruled.

Point of error No. 4 asserts that the trial court erred in admitting the opinion testimony of Dr. Hansen regarding plaintiff's loss of future earning capacity because the witness did not testify in response to a hypothetical question and assumed facts not in evidence. We have carefully examined the statement of facts and find a total absence of any such objections by appellant in the lower court. Appellee contends that appellant has waived any error, if any existed, by a failure to raise a proper and timely objection in the trial court. We agree.

It is elementary that failure to make a timely and proper objection to proffered evidence will prevent a party from complaining on appeal of its admission by the

trial court. *Swinney v. Winters*, 532 S.W.2d 396, 401 (Tex.Civ.App.—San Antonio 1975, ref'd n. r. e.); *Cain v. Zurich Insurance Company*, 426 S.W.2d 575, 577 (Tex.Civ.App.—Dallas 1968, n. w. h.); *Hix v. Wirt*, 220 S.W.2d 530, 532 (Tex.Civ.App.—Waco 1949, ref'd n. r. e.). Objections to evidence that are different from those urged in the trial court will not be considered on appeal. *City of Wichita Falls v. Jones*, 456 S.W.2d 148, 154 (Tex.Civ.App.—Fort Worth 1970, n. w. h.). The objection must be timely and point out any alleged defect with specificity. *Wheatheart Feeders, Inc. v. Pletcher*, 453 S.W.2d 902, 904 (Tex.Civ.App.—Amarillo 1970, dism'd); *State of Texas v. Stiefer*, 443 S.W.2d 275, 279 (Tex.Civ.App.—Tyler 1969, ref'd n. r. e.). Appellant has failed to preserve the error, if any, by the trial court in admitting the opinion testimony of Dr. Hansen because such testimony was not in response to a hypothetical question or allegedly assumed facts not in evidence. Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error contends that the trial court erred in allowing Dr. Hansen to testify as to what was shown by certain surveys and reports not in evidence because such testimony was hearsay and not the best evidence. The reports in question consist of Department of Labor manpower studies and a survey of interior designers in the Austin area. Dr. Hansen testified that his opinion regarding appellee's loss of future earning capacity was based, in part, on information and data he obtained from these studies. The trial court instructed the jury that this information was "simply used for the purpose of deriving his opinion."

Appellant made no claim of surprise or that the reports were not equally available to all parties. The general rule is that an expert witness, having testified to an opinion, is permitted to testify as to the basis of his opinion and thereby enable the jury to judge the weight to be accorded his testimony. McCormick and Ray, supra at section 835, p. 610. Since it is not offered as evidence of the facts declared but merely as an explanation of the opinion, such testimony does not constitute hearsay. *Lewis v. Southmore Savings Association*, supra; *State of Texas v. Oakley*, supra; *Miller v. Hardy*, 564 S.W.2d 102, 106 (Tex.Civ.App.—El Paso 1978, n. w. h.).

In addition, appellant argues that because these reports were contained in written instruments, the best evidence rule applied. We disagree. Dr. Hansen was not attempting to prove the contents of the reports but merely seeking to show the basis of his opinion testimony, the reports themselves were only collaterally involved. An objection on the basis of the best evidence rule is inapplicable. *Williams v. General Motors Corporation*, supra at 940; *Texas Electric Service Company v. Linebery*, 327 S.W.2d 657, 665 (Tex.Civ.App.—El Paso 1959, dism'd). Appellant's fifth point of error is overruled.

■ Appellant's sixth point of error complains that the trial court erred in denying appellant's requested jury instruction. The instruction which appellant requested be included in the charge to the jury stated, "Do not take into consideration or allow anything for any numbness of the left hand or left foot." This request was denied by the trial court which instructed the jury as follows:

"You are further instructed that you will not include any amount for any condition not resulting from the injuries, if any, which resulted from the occurrence in question, nor will you include any amount for any condition existing before the occurrence in question, except to the extent, if any, that you find from a preponderance of the evidence that such other condition, if any, was aggravated by the injuries, if any, which resulted from the occurrence in question."

Appellant argues that there was no evidence that any alleged numbness suffered by appellee was a result of any injury from the accident here in question. We agree. It is appellant's contention that because of the lack of a causal link, appellant was entitled to the requested affirmative exclusion and that the trial court's refusal constituted reversible error. We cannot agree.

Any alleged symptoms of numbness experienced by appellee are the subject of only a few, isolated references in the statement of facts. The appellee's complaints of numbness in the left hand and foot are found in only two medical reports which were introduced into evidence. These two cursory references are the only evidence in the record tending to show that appellee ever experienced such symptoms. During cross-examination by counsel for appellant, Dr. Breck testified that he never found any loss of sensation in appellee's extremities and that appellee had never mentioned any such complaint to him. At no time did appellee testify concerning any loss of sensation or numbness in her extremities.

Appellant relies on the rule of *Dallas Railway & Terminal Company v. Ector*, 131 Tex. 505, 116 S.W.2d 683, 685 (Tex.Comm. App.1938, opinion adopted), which states:

"It has long been a settled rule in this state that, where a plaintiff in a personal injury suit is suffering from an infirmity not caused by the accident which is the basis of the suit, and where the injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are *closely connected and intermingled to the extent that the jury might become confused* and allow for improper elements of damages, the trial court should affirmatively charge the jury that plaintiff is entitled to recover only to the extent that his injuries were aggravated by the defendant's negligence." [Emphasis added.]

The trial court may properly specifically exclude elements of damages which may not properly be considered by the jury where there is no evidence of causal relation. *Tyler Mirror & Glass Company v. Simpkins*, 407 S.W.2d 807, 815 (Tex.Civ.App. —Tyler 1966, ref'd n. r. e.).

However, we do not believe that the instant case presents a situation where the improper element of damages was so closely connected or intermingled with elements which were proper for the jury to consider that the jury might become confused. Upon viewing the record as a whole, the isolated and cursory references to the alleged symptoms of numbness were not such that the jury was misled by the trial court's failure to specifically instruct thereon. *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573, 576 (Tex.Civ.App.—Houston [14th Dist.] 1968, ref'd n. r. e.). While it may have been proper for the trial court to have granted appellant's requested instruction under the circumstance of the present case, the trial court did not commit reversible error, if any error was committed, by denying appellant's specific instruction. Rule 434, T.R.C.P. Appellant's sixth point of error is overruled.

Appellant's points of error nos. 7 and 8 challenge the jury's response to Special Issue No. 4e, finding loss of future earning capacity in the amount of $39,-600.00. It is appellant's contention that the trial court erred in overruling appellant's motion for new trial because there was no evidence and insufficient evidence to support the jury's finding.

In determining a "no evidence" point, which is a question of law, we may consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and we must reject all evidence and inferences which are contrary to the finding. *Biggers v. Continental Bus System, Inc.*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914). We have reviewed the record in the instant case and find that there is evidence of probative force to support the jury's verdict and appellant's seventh point of error is overruled.

In determining a factual sufficiency point, we must consider and weigh all the evidence to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust and the finding therefore be set aside and the cause remanded for a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951); Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L.Rev. 803 (1952).

We have examined the entire statement of facts and reviewed it in light of the rule announced by the Supreme Court in *In re King's Estate*, supra. We deem the evidence sufficient to support the jury's answer to the special issue in question and conclude that the jury's finding regarding loss of future earning capacity is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellant's eighth point of error is overruled.

Upon reviewing the statement of facts, we have noticed that portions of the testimony have been underlined in red ink by one of the parties. We strongly disapprove of such a practice.

We have considered all of appellant's points of error and believe them to be without merit and the same are hereby overruled. The judgment of the trial court is affirmed.