In the Matter of the MARRIAGE OF Archie Morris SAMFORD, Jr., and Rebecca Samford and in the Interest of Archie Morris Samford, III, a Child.

No. 06–05–00040–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 25, 2005.

Decided Sept. 27, 2005.

William T. Hughey, Law Offices of William T. Hughey, Marshall, for appellant.

Stephen C. Mahaffey, Sherry L. Mahaffey, Mahaffey & Mahaffey, PC, Carthage, for appellee.

Before MORRISS, C.J., CARTER and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CARTER.

The marriage of Archie and Rebecca Samford was concluded by a divorce in Panola County, Texas. The Samfords have one son, and much of the controversy surrounding the divorce concerned the conservatorship and possession of the child, as well as property issues. Several temporary hearings were conducted before the presiding judge, Honorable Terry Bailey. Judge Bailey knew the parties and the child. Ultimately, Judge Bailey recused from the case without a motion having been filed. The Honorable Paul Banner was assigned to the case and presided over two hearings, including the final divorce hearing. Before the final hearing,

the parties and their attorneys conducted a mediation settlement and settled all issues, in writing. The final hearing incorporated the mediated settlement agreement. Rebecca now appeals alleging in one point of error that Judge Bailey erred in "disqualifying/removing himself" from the proceedings and "violated [Rebecca's] right and ability to dispose of her divorce and associated issues in a manner that allowed her to use all of her legal remedies...." Additionally, Rebecca argues that Judge Bailey was disqualified and that all orders/rulings and other related matters are void.

We believe the issues are: (1) Was Judge Bailey disqualified from hearing the case? and (2) Did Judge Bailey err in failing to recuse earlier?

**Factual and Procedural Background**

This divorce was filed November 17, 2003. The first temporary hearing was conducted December 17, 2003. The parents were appointed joint temporary managing conservators and, generally, the time of possession with the child was split equally between the parents. At the conclusion of the lengthy hearing, the following discussion between Judge Bailey and Rebecca occurred:

> THE COURT: ... this particular case that child means absolutely too much to me. That child has been a fixture in my life ever since he's been a fixture in yours. That child means way too much to me.
>
> MRS. SAMFORD: Thank you.
>
> THE COURT: I'm going to do my very best to protect that child.
>
> MRS. SAMFORD: Thank you.
>
> THE COURT: Maybe I—[1] maybe I should not be hearing this case be-

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. Rebecca's brief contains a "note" to the Court in eight separate instances arguing that the "dash dash quotation (— —) ... appears to

cause it's a situation that this child does mean a whole lot to me.

MRS. SAMFORD: Well, that's what he needs. That's what I want for him.

Rebecca filed a motion for further temporary orders February 25, 2004, alleging that the prior order was no longer workable. On June 30, 2004, an agreed temporary order was entered concerning summer possession of the child. On August 20, 2004, Archie filed a motion to modify the temporary orders, and a hearing was conducted September 1, 2004, at which time the attorney for Rebecca notified the court that he had filed a motion to withdraw as counsel. At that hearing, counsel for Rebecca expressed that Rebecca did not feel comfortable with counsel because he and Archie had practiced law in the same small community for some time. Counsel also mentioned that Rebecca would feel more comfortable if another judge could hear the case that "does not have any connection with Mr. Samford." The court noted there had been several previous hearings conducted, but said, "[I]t's still discretionary for me whether I want to voluntarily step aside. I'm going to kind of leave that one hanging until the new attorney is involved in the case. If he wants to address that, then I'll give him— give him time to address it."

Another temporary hearing was conducted September 30, 2004. No motion to recuse was ever filed, but the trial court stated that it was planning for another judge to take over the case. Thereafter, the case was assigned to the Honorable Paul Banner, who set another temporary hearing and conducted a hearing November 23, 2004, resulting in an order signed January 3, 2005. That order required the parties to participate in mediation in an attempt to settle the case. On January 11, 2005, the parties participated in mediation and entered into a written settlement agreement. Then, on January 25, 2005, the parties and attorneys appeared before Judge Banner and obtained a final decree of divorce incorporating into the final judgment the terms of the mediated settlement agreement.

## Analysis

*1. Was Judge Bailey disqualified from hearing the case?*

■ The answer to this question is clearly "no." This was a divorce proceeding filed by a lawyer practicing in a small community. Apparently in this case, the trial judge was a neighbor of the litigants and not only knew Archie professionally, but also knew the child, who was the subject of the conservatorship action. Judge Bailey expressed that he cared a lot about the child and would do his best to protect him. This is not an unusual situation faced by trial judges in small communities.

■ A judge is disqualified from sitting on a case as enumerated by Article V, Section 11 of the Texas Constitution. TEX. CONST. V, § 11. It provides that: "No judge shall sit in any case wherein the judge may be interested...." The interest of a judge, in order that he or she may be disqualified, must, in general, be a direct pecuniary or property interest in the subject matter of the litigation. A remote

reflect that the Court Reporter missed or did not hear testimony or statements is present in an alarming number through out [sic] the entire record of this case." Each volume of the court reporter's record has a certificate that the record is a true and correct transcription of the record. Rebecca does not point out any part of the record that she believes to be missing or incorrect. We have no basis to conclude that the record is incomplete or that the court reporter did not properly certify the record. The complained-of signal (– –) more than likely is the reporter's method of indicating a pause or a transition, e.g., "And when I picked him up at school, which is usually about – – leave at 2:30 . . . ."

or problematic interest, or one merely in the legal question involved, will not suffice. *See Palais Royal, Inc. v. Partida,* 916 S.W.2d 650, 653 (Tex.Civ.App.-Corpus Christi 1996, orig. proceeding); *Narro Warehouse, Inc. v. Kelly,* 530 S.W.2d 146, 149 (Tex.App.-Corpus Christi 1975, writ ref'd n.r.e.) (interest must be direct, real, and certain, immediately resulting from the litigation in question); *Moody v. City of Univ. Park,* 278 S.W.2d 912, 919 (Tex. Civ.App.-Dallas 1955, writ ref'd n.r.e.) (interest necessary to disqualify must be direct or pecuniary interest in subject-matter litigation).

Here, Rebecca argues that, since this case was not primarily one of a financial nature (it involves custody and conservatorship issues), the term "interest" need not include a pecuniary or property interest. Rebecca argues that Judge Bailey displayed the requisite disqualifying "interest" in the litigation when he expressed that the child meant a lot to him. We disagree.

The law requires that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam.Code Ann. § 153.002 (Vernon 2002). Judge Bailey's comments merely expressed that he would be vigilant to "protect that child." That was his duty. Judges should be encouraged to always keep the best interest of the child at the forefront. There is no allegation that Judge Bailey had an interest in the outcome of the case or had an interest in which parent had the most time of access and possession with the child. We have been cited no authority and have found none suggesting that a judge has an improper "interest" in a case when the judge indicates that a child's best interest is paramount. At the time the judge made these comments, Rebecca agreed with him and thanked the judge. Judge Bailey was not disqualified from hearing the case.

*2. Did Judge Bailey err in failing to recuse earlier?*

■ A. Rebecca's argument is that Judge Bailey erred in failing to recuse himself sooner in the proceedings. The argument is that Judge Bailey's orders set the tenor for all future rulings by the new trial judge.

■ The short answer to this issue is that a motion to recuse Judge Bailey was never filed. The attorneys and the judge discussed the issue, and in fact Judge Bailey did recuse himself before the final hearing was conducted. Recusal is governed by the provisions of Tex.R. Civ. P. 18a. The rule provides that, at least ten days before the trial date or other hearing, a party may file a motion stating the grounds why the judge should not sit in the case. Upon such a filing, the judge must either voluntarily recuse or request the presiding judge of the administrative district to assign another judge to hear the recusal motion. The distinguishing feature between disqualification and recusal is that recusal may be waived if not raised by a proper motion. *Towers,* 858 S.W.2d at 560. A party that fails to follow the Rule 18a procedure waives the right to complain of the judge's failure to recuse himself or herself. *Carson v. Serrano,* 96 S.W.3d 697, 698 (Tex.App.-Texarkana 2003, pet. denied); *see In re Union Pac. Res. Co.,* 969 S.W.2d 427, 428 (Tex.1998); *Spigener v. Wallis,* 80 S.W.3d 174, 180 (Tex.App.-Waco 2002, no pet.). The issue was waived.

B. Judge Bailey did recuse himself before the final hearing. Numerous temporary hearings were held in this case between November 2003 and August 2004. After the hearing in August, even though no motion to recuse was filed, Judge Bai-

891

ley voluntarily recused from further hearings and a visiting judge was assigned. Judge Banner presided over the additional hearings, including the final divorce hearing at which time the terms of the mediated settlement were thoroughly presented and the judge entered the judgment on the terms to which the parties had agreed. The matter presented for review in this Court concerns the final judgment entered by Judge Banner, which superseded any temporary orders previously entered. *See Ex parte Carroll*, 141 Tex. 566, 175 S.W.2d 251, 252 (1943); *Morris v. Morris*, 654 S.W.2d 789, 791 (Tex.App.-Tyler 1983, no writ). The final judgment even included a provision discharging both parties from any further liabilities or obligations imposed by the temporary order of the court rendered December 17, 2003. Even if Judge Bailey had improperly presided over the temporary hearing (which we do not hold), such conduct would have no impact on the final judgment entered by agreement of the parties and in which Judge Bailey had no participation.

C. Finally, the judgment rendered was in accordance with a mediated settlement agreement entered by the parties and their attorneys. We fail to see how Judge Bailey's participation in temporary hearings could in any way affect the final judgment rendered by Judge Banner based on a written agreement of the parties. We find no error.

**Cross–Point**

Archie has alleged by cross-point that Rebecca's appeal is frivolous and requests that damages and costs be assessed against Rebecca. That issue will be dealt with by a separate order.

We affirm the judgment of the trial court.