

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00085-CV

_____

IN THE MATTER OF THE MARRIAGE OF
ARCHIE MORRIS SAMFORD, JR. AND
REBECCA SAMFORD AND IN THE INTEREST
OF ARCHIE MORRIS SAMFORD, III, A MINOR CHILD

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2004-D-042

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

The disputes between Rebecca and Archie Morris Samford, Jr., regarding their divorce and custody of their son have worn an often-trod path to this Court. This appeal by Rebecca is her fourth attempt to seek redress from the actions of the trial court. In this most recent appearance, Rebecca appeals from an order of the trial court that directed her to pay attorney's fees to her former husband; she also complains because she was not permitted a jury trial on the last variation of the proceeding.

By way of background, Rebecca and Archie entered into a mediated settlement agreement in their divorce and a decree of divorce was entered January 25, 2005. Despite the entry of the divorce in accord with the mediated settlement agreement, Rebecca appealed; the appeal was not successful.[1]

Thereafter, Archie later sought modification of the parent-child relationship. During that proceeding, the court ordered both parents and the child to appear for mental examinations and directed the parents to sign consent forms requested by the examiner. Although Rebecca refused to sign the consent forms or to submit to a mental examination, she moved the court to order Archie to be examined by a professional counselor. Archie acquiesced and submitted to the ordered mental examination.

Rebecca's continued wilful and bad-faith refusal to obey the order for a mental examination and other orders issued by the trial court culminated in the trial court striking her pleadings. On

---

[1] *In re Marriage of Samford*, 173 S.W.3d 887 (Tex. App.—Texarkana 2005, pet. denied).

appeal, we reversed that decision, noting that she was entitled to a trial, despite the striking of her answer.[2]  The trial court went forward with a bench trial, modified the rights of the parties, and awarded attorney's fees to Archie.

In the midst of this action, Rebecca filed a petition seeking mandamus relief from this Court in which she asked us to order the trial court to conduct a jury trial of the pending issue.[3]  We denied the petition for writ of mandamus, finding that because the pleading did not seek a change of conservatorship (seeking only to alter the rights of access to and possession of the child), a jury trial was not required.

**The Current Appeal**

Determining the object of Rebecca's instant appeal is initially difficult.  Her notice of appeal, filed on July 16, 2008, specifies that it is from an "order/judgment" signed on June 17, 2008, "which implements part of a 'Letter Decision' [sic] of the Trial Court dated May 1, 2008, which has not been reduced to a Final Judgment in total."  The July 16 document is entitled as an order, and directs Rebecca to sign a deed.  It neither contains any language purporting to implement or incorporate any "letter decision," nor does any such document appear in the record before us.  None of Rebecca's issues on appeal refer to anything set out in the complained-of document.  Accordingly, if we restrict her appeal to the order from which she states she is appealing, the issues of which she complains are

---

[2]*In re A.S.*, 241 S.W.3d 661 (Tex. App.—Texarkana 2007, no pet.).

[3]*In re Samford*, 249 S.W.3d 761 (Tex. App.—Texarkana 2008, orig. proceeding).

not applicable and she has wholly failed to allege claims of error related to the order at bar. Further, it is not clear that this is a type of order which, standing alone, is subject to appeal as it does not dispose of any number of other issues that were pending at that time before the trial court. The general rule is that there can only be one final judgment in a case. TEX. R. CIV. P. 301. We are restricted by statute from hearing only certain interlocutory orders. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon 2008). An order that does not dispose of all parties and all issues in the case must be classified, for purposes of appeal, as an interlocutory order. *Ruiz v. Ruiz*, 946 S.W.2d 123, 124 (Tex. App.—El Paso 1997, no writ). At the time this appeal was filed, the record would not have reflected that a final judgment had been entered and it would appear that this Court would not have had jurisdiction to entertain the appeal.

However, if we look at the record as it existed several months later than the date that the notice of appeal was filed, we find an order in a suit to modify the parent-child relationship which was signed on September 5, 2008. That order is a type that is appealable, contains language reflecting the intent of the court that it be final, and contains language awarding the attorney's fees that are the main bone of contention in this appeal.

In the interest of justice, we deem the notice of appeal to be from the actual final judgment in this case. We will treat this as a prematurely filed notice of appeal and deem it filed timely pursuant to Rule 27.1 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 27.1; *see* TEX. R. APP. P. 27.2.

4

**The Issues**

Rebecca first contends that the evidence is insufficient to provide the "good cause" that she argues is necessary before the trial court could award attorney's fees. The gist of this argument is that since Archie would have been necessarily aware that Rebecca was "a certain type of person" and that he "knew who she was" before the entry of their divorce decree about a year and a half earlier, he should have made certain that the divorce decree guarded against her unpredictable behavior. Rebecca further maintains that Archie agreed to the terms of the divorce decree in spite of being "well aware of Rebecca's personality." Because, she argues, Archie was a family law attorney, he should have "dealt with these issues in the divorce proceeding." Following through this line of reasoning, because there was no claim by Archie of a "recent mental impairment" of Rebecca (i.e., one that did not exist at the time of the entry of the divorce decree) then there was a failure to demonstrate a change in circumstance which justified the changes in visitation and custody which Archie had requested. Rebecca's argument (which is essentially that clearly Archie was entitled to no attorney's fees because he knew what Rebecca was like before the divorce) is unavailing. Although he presumably would have had knowledge before the divorce was granted of her then-existing propensity for bizarre or contumaciously irrational behavior, that knowledge does not hinder his successful efforts to seek judicial relief over a year after the divorce was granted.

The Texas Family Code provides that the court *may* order reasonable attorney's fees and expenses and order the fees to be paid directly to an attorney. TEX. FAM. CODE ANN. § 106.002(a)

5

(Vernon 2008). The language of this statute is permissive. It authorizes an award of attorney's fees and it permits the taxing of the award as costs, but it neither requires that the trial court award attorney's fees, nor that attorney's fees be taxed as costs. *In re Z.B.P.*, 109 S.W.3d 772, 784 (Tex. App.—Fort Worth 2003, no pet.); *see Drexel v. McCutcheon*, 604 S.W.2d 430, 433 (Tex. Civ. App.—Waco 1980, no writ).

Rebecca focuses her argument on her desire for us to visit the question of whether there was "good cause" found for the award of attorney's fees. The emphasis in misplaced. "Good cause" language is neither in the authorizing statute, nor in the applicable caselaw as a predicate for such an award. *See Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). Rather, the award of attorney's fees in this type of case is a discretionary determination by the trial court; the question of whether good cause exists for the award of attorney's fees may be a factor that the court might consider in making such a ruling, but it is neither a critical nor a required element.

Where the "good cause" finding is relevant is the circumstance in which a nonprevailing party is awarded attorney's fees. TEX. R. CIV. P. 131. *See In re M.A.N.M.,* 231 S.W.3d 562, 565 (Tex. App.—Dallas 2007, no pet.). The trial court's discretion is not unlimited, and no provision is made, absent good cause, for allowing an unsuccessful party recovery of his attorney's fees. *London v. London*, 192 S.W.3d 6, 19 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Reames v. Reames*, 604 S.W.2d 335, 337 (Tex. Civ. App.—Dallas 1980, no writ).

Thus, there was no necessity under these circumstances for the trial court to make a finding that Archie had shown good cause for the award of attorney's fees.

Rebecca goes on to argue that there was insufficient evidence presented to the trial court to support the amount of the award. An award of attorney's fees must be supported by the evidence and if it finds such support, the trial court does not abuse its discretion in making such an award. *Tull v. Tull*, 159 S.W.3d 758, 760 (Tex. App.—Dallas 2005, no pet.). The reasonableness of an attorney's fee award is a question of fact and must be supported by competent evidence. *Id*. For example, to support an award, there should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The determination is not made in a vacuum, however, and "evidence on each of these factors is not necessary to determine the amount of an attorneys' fee award." *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.). The court may also consider the entire record and the common knowledge of the lawyers and judges. *Id*.; *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

In this case, there is testimony regarding the number of hours that the attorney devoted to the case (145.4), the total fee charged ($21,810.00), the costs incurred ($11,014.80), the complexity of the case, and the number of hearings required. There was evidence about the need for additional fees should an appeal be taken, and evidence bringing to the court's memory its striking of Rebecca's

pleadings, the unique issues of law raised, and the repetitive hearings on the psychological care issues. Counsel testified that although his normal billing rate was $175.00 per hour, he had billed at a lesser rate of $150.00 per hour for this case as a professional courtesy to a fellow attorney.

This evidence is sufficient for the trial court, which had witnessed this entire contentious affair, to determine within its discretion that attorney's fees were payable, and to support the amount awarded.

The contentions of error are overruled.

Rebecca next contends that the trial court improperly denied her a trial by jury, and asks us to reconsider our ruling on her mandamus petition, a petition that this Court has previously denied. We held in our ruling on that petition that the trial court did not abuse its discretion by striking her request for a jury trial because the pleadings neither requested a change in conservatorship, nor a designation that either party has the exclusive right to designate the child's primary residence. We thus concluded that no extant request allowed for decision by a jury. Rebecca now invites reconsideration of our ruling on this issue, for the same reasons and under the same facts which we have already discussed and found without merit. We decline the invitation.

We affirm.

                              Bailey C. Moseley
                              Justice

Date Submitted:     July 9, 2009
Date Decided:       July 10, 2009