William MOORE, Petitioner,

v.

Nancy GRANTHAM, Respondent.

No. B–8529.

Supreme Court of Texas.

Feb. 27, 1980.

On Rehearing May 14, 1980.

Rehearing Denied June 20, 1980.

Brown, Maroney, Rose, Baker & Barber, Scott R. Kidd, Austin, for petitioner.

Kidd & Whitehurst, William O. Whitehurst, Jr. and Mack Kidd, Austin, for respondent.

GREENHILL, Chief Justice.

This case involves the question whether an expert in vocational rehabilitation can give his opinion concerning a person's future earning capacity, when his opinion is based solely on hearsay information not otherwise introduced into evidence at trial.

The trial court was of the view that our decision in *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977), permitted the introduction of such expert testimony. The trial court, therefore, allowed the witness to state his opinion to the jury. The court of civil appeals affirmed. That court interpreted *Slaughter* as permitting the introduction of an expert's opinion based upon hearsay so long as the hearsay was "of a type upon which the expert and others within his profession customarily [relied] . . . ." 580 S.W.2d 142, 148.

We disagree with the lower courts' reading of our decision in *Slaughter*, and the

other applicable precedents. Accordingly, we reverse the judgment of the court of civil appeals, and remand this cause for a new trial.

Nancy Grantham brought suit against William Moore. She sought damages for injuries arising out of an automobile accident. After trial to a jury, in which all questions of liability were answered favorably to Ms. Grantham, the jury returned a verdict for $56,576.44. Of this amount, $39,600.00 was awarded for Ms. Grantham's loss of future earning capacity. The trial court rendered judgment on the verdict. The trial judge overruled Moore's contention that there had been no competent evidence on which the jury could have based its award for loss of future earning capacity.

The evidence concerning the issue of lost earning capacity may be summarized as follows. Prior to the accident, Ms. Grantham had been trained in the field of interior design. She had about five years experience in the field, working both in salaried positions and in attempting to start her own business. In her salaried jobs, Ms. Grantham had earned no more than $600.00 per month.

While working for herself, Ms. Grantham had charged from $20.00 to $30.00 an hour. She was unable, however, to present any evidence of her monthly income during this period of self-employment. At the time of the accident, Ms. Grantham's business was in a state of decline, and she was actively seeking a salaried position elsewhere.

Other than the expert testimony, set out below, there was no other evidence concerning her potential earning capacity in the interior design field.

After the accident, Ms. Grantham was unable to continue working in the area of interior design. Although she had been offered jobs in that field, she was unable to estimate her potential income in that field, since the available job positions paid only on a commission basis. At the time of trial, Ms. Grantham was employed as an assistant manager of a retail store. Her job paid $600.00 per month.

In an effort to meet her burden of proof in relation to her loss of future earning capacity, Ms. Grantham called Dr. Carl Hansen as her expert witness. Dr. Hansen is a professor at The University of Texas, where he is the Director of the Rehabilitation Counsellor Education Program. He is qualified as an expert in vocational rehabilitation.

Despite his qualifications in the field of vocational rehabilitation, Dr. Hansen readily admitted that he had *no personal knowledge of, or contact with*, the profession of interior design.[1] In preparing to testify concerning Ms. Grantham's future earning capacity in this field, Dr. Hansen referred to Department of Labor and Manpower publications, conducted a local telephone survey of Austin area interior design businesses, and interviewed a home economics professor at The University of Texas. *At trial*, however, *Ms. Grantham failed to introduce into evidence any of the external sources relied on by Dr. Hansen* in preparing to testify. She relied *solely* on the testimony of Dr. Hansen.

Dr. Hansen testified that an interior designer, with experience and ability compa-

---

[1] Since Dr. Hansen had no experience in, or personal contact with, the interior design profession, Moore claimed that Dr. Hansen was not qualified to testify as an expert concerning the wage potential in that field. It was Moore's contention that since Dr. Hansen had no personal expertise in the area, he was no more qualified than an ordinary layman concerning the job potential in interior design.

Although the disposition of this case makes it unnecessary to pass on this specific objection to Dr. Hansen's qualifications as an expert, it is suggested in McCormick & Ray that:

"To justify the use of a particular expert's testimony it must appear (1) that the subject is so related to some science, profession or business to be beyond the knowledge of the average laymen, and (2) that the witness offered has *such skill, knowledge, or experience in the particular field* to make it probable that his opinion will be of assistance to the trier [of fact] in making the factual determination."

C. McCormick & R. Ray, *Texas Law of Evidence* § 1400 (1956) (emphasis added and footnotes omitted).

rable to Ms. Grantham, should earn between $700.00 and $900.00 per month. Dr. Hansen further testified that the Department of Labor Statistics showed the statewide average for interior decorators to be closer to $900.00 per month. His telephone survey in Austin, however, showed the area average to be closer to $700.00 per month.

Since Ms. Grantham was earning only $600.00 per month, Dr. Hansen calculated that her total lost earning capacity ranged between $39,200.00 and $117,600.00. As previously noted, the jury returned a verdict awarding Ms. Grantham $39,600.00 for her future lost earning capacity.

■ It has long been the law of this state that an expert's opinion may not be based solely on the statements or reports of third persons, unless those statements are properly in evidence and the opinion is sought through hypothetical questions. *Reed v. Barlow*, 157 S.W.2d 933 (Tex.Civ.App.—San Antonio 1941, writ ref'd); *Perkins v. Springstun*, 557 S.W.2d 343 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.). *See also* C. McCormick & R. Ray, *Texas Law of Evidence* § 1404 (1956 & 1978 Supp.).

While the courts have adopted a more liberal approach in allowing an expert's opinion testimony to be based *partially* on hearsay, *Graham v. Oak Park Mobile Homes, Inc.*, 546 S.W.2d 394 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Bryant v. Trinity Universal Insurance Co.*, 411 S.W.2d 945 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); *Sutherland v. McGregor*, 383 S.W.2d 248 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); *Gray v. Bird*, 380 S.W.2d 908 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.), this Court has yet to adopt a rule permitting an expert's opinion testimony to be based *solely* on hearsay.

Contrary to Ms. Grantham's contentions, this Court has specifically declined to adopt such a broad rule of admissibility in two recent decisions. In *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977), this Court was faced with the question

whether an injured plaintiff could present expert medical opinion testimony concerning the cause of an injury, where the doctor had been consulted solely for the purpose of giving testimony and not for treatment. In holding that this expert medical opinion could be introduced into evidence, this Court was careful to point out that the testifying doctor had *not* based his expert opinion solely on the patient's history, as told by the patient. Rather, the doctor gained personal knowledge of the patient's condition by making a physical examination and taking x-rays.

■ In permitting the doctor's testimony into evidence, we declared our understanding of the state of the law in relation to *expert opinion testimony*: "Texas courts have followed the general rule that *where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay*, his testimony is admissible." 561 S.W.2d at 791 (emphasis added).

Nor does the opinion in *Lewis v. Southmore Savings Association*, 480 S.W.2d 180 (Tex.1972)[2] support Ms. Grantham's argument in behalf of such a broad rule of admissibility. In *Lewis*, an attack was made upon the granting of a charter to a savings and loan association. This attack was based upon the contention that certain expert testimony should have been excluded from the administrative hearing, since the expert's opinion was based upon hearsay. Further, since that testimony should have been excluded, it was argued that there was insufficient evidence to support the order of the Savings and Loan Commissioner.

In rejecting these contentions, the opinion held that, without regard to the evidence attacked as hearsay, there was "substantial evidence, *based on personal knowledge* of the lay and expert witnesses, to support" the Commissioner's order. 480 S.W.2d at 184 (emphasis added). Further, the opinion specifically declared, in rejecting the contention that certain expert opinion testimony should have been excluded as hearsay, that:

2. The *Lewis* opinion is not an opinion of the court. All *nine justices* agreed to the judgment, but six justices "concurred in [the] result" reached by the opinion.

*Dr. Yeager also testified from his own personal knowledge.* An expert, when qualified as such, may give his opinion and relate sources which are customarily and usually relied upon by experts in the field upon which *he partially relied* in forming his opinion, *together with his own personal knowledge,* which support or tend to support that opinion.

480 S.W.2d at 186 (emphasis added).

In the instant case, Dr. Hansen admitted that he had *no personal knowledge* of the wage scale in the interior design field. Instead of *partially* relying on outside sources, as contemplated in *Lewis,* Dr. Hansen *totally* relied on outside sources, with reference to the wage scale in the interior design field. Thus, the *Lewis* opinion, rather than permitting Dr. Hansen's expert opinion on Ms. Grantham's lost earning capacity, would have prevented the submission of that testimony, as his opinion about her earning potential was based solely upon hearsay, unmixed with any personal knowledge.[3]

A case that is directly on point is *Reed v. Barlow,* 157 S.W.2d 933 (Tex.Civ.App.—San Antonio 1941, writ ref'd). In *Reed,* the court held expert opinion testimony concerning the potential oil production from certain lands to be inadmissible. In *Reed,*

the expert had collected all of the information relevant to his testimony from third party sources. In giving his testimony, he relied solely on records of electrical surveys, reports of oil scouts, reports of production data, sample cores and logs of completed wells in the vicinity surrounding the land that he was studying. *At trial, however, none of those reports, records or logs* on which he relied *were placed into evidence.* In holding this opinion testimony to be inadmissible, the court declared:

The settled rule is that while a duly qualified expert witness may give his opinion based upon sufficient relevant facts, such facts must be within his personal knowledge, or assumed from common or judicial knowledge, or established by evidence; *his opinion is without value, and is inadmissible, if based upon facts and circumstances gleaned by him from ex-parte statements of third persons, and not established by legal evidence before a jury trying the ultimate issues to which the opinion relates.*

157 S.W.2d at 935 (emphasis added).[4]

In the instant case, Dr. Hansen based his testimony solely on the *ex parte* reports and communications that he had investigated in the course of dealing with Ms. Grantham's

---

3. Ms. Grantham also cites *State v. Oakley,* 163 Tex. 463, 356 S.W.2d 909 (1962) in support of her contention that an expert's opinion is admissible, even though based totally on hearsay. In *Oakley,* this Court held that an expert in land valuation could testify concerning sales of lands comparable to the land being condemned, even though he had relied completely on third party sources, and not personal knowledge, to gain information about those sales.

The difference between *Oakley* and the present case is that in *Oakley* the land appraiser, whose qualifications to appraise land were not challenged, relied on at least two sources in reaching his opinion on the value of land: (1) evidence of comparable sales, based upon other persons' representations, and (2) his personal familiarity with the commercial value of land, as applied to the condemned tract.

It is the personal familiarity with the commercial value of land that distinguishes the expert appraiser in *Oakley* from Dr. Hansen. Dr. Hansen has relied *solely* on the hearsay information conveyed to him, concerning the potential earnings in interior design, in reaching his

opinion on Ms. Grantham's lost earning capacity. *See also,* footnote 6, *infra.*

4. The court in *Reed* also declared that an expert could give his opinion even though the expert had no personal knowledge of the facts, if he was questioned on hypothetical situations, based upon facts in evidence at trial. The court specifically stated:

"when that information is placed in evidence from original or duly authenticated sources, an expert geologist, such as the witness Jennings, may give his opinion, in reply to hypothetical questions based upon such evidence, as to whether oil may be developed by offset wells in given areas."

157 S.W.2d at 935.

Nothing in the instant case should be interpreted as questioning the long standing tradition of having experts testify in response to hypothetical situations. The only practice that we find unacceptable is that of having an expert establish, as fact, those things of which he has *no* personal knowledge, and which can find no other basis in the evidence.

case. As in *Reed v. Barlow*, all of these sources were apparently available at the time this case was tried. But, none of these sources were introduced into evidence at trial.

While the determination of Ms. Grantham's future employment and compensation may have been a proper subject for expert testimony, the record reveals no reason why there was no direct testimony, from persons with first hand knowledge, concerning the economic conditions in the field of interior design.[5] Rather than relying so heavily on Dr. Hansen's "survey," Ms. Grantham should have brought direct evidence of the market and compensation for interior designers into the courtroom, where it could have been challenged by Moore, and appraised by the jury. It was improper to force both Moore and the jury to accept second hand representations concerning a vital element in Ms. Grantham's case.[6]

■ Accordingly, we find that it was error for the trial court to permit Dr. Hansen to testify concerning Ms. Grantham's future

earning capacity in the field of interior design, an area of which he had no personal knowledge. In light of the close approximation of the jury verdict to the expert opinion given by Dr. Hansen, we hold that this error was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 503, Texas Rules of Civil Procedure.

Accordingly, we reverse the judgment of the court of civil appeals and remand the cause to the trial court for a new trial.

## ON MOTION FOR REHEARING

■ In her motion for rehearing, Nancy Grantham requests that she be allowed to remit the portion of the judgment awarding her $39,600 for loss of future earning capacity, and prays that the judgment of the trial court be reformed so as to eliminate this recovery and, as so reformed, be affirmed.

Mr. Moore's only response to this request has been to challenge this Court's jurisdiction to accept an offer of remittitur.

---

**5.** Ms. Grantham does not face an impossible burden in being required to call a person with some knowledge of the interior design field to demonstrate the wage scale. For example, she could have testified about the amount of money that she could have made in the profession, *King v. Skelly*, 452 S.W.2d 691 (Tex.1970); but she declined to do so. She could have called (1) other interior designers of similar experience and background, (2) employers in the interior design field, (3) trade representatives, or (4) someone with a background of experience concerning the employment of interior designers, to mention a few possibilities.

**6.** *See* 3 Wigmore, Evidence §§ 715(2), 719(2) (Chadbourn Rev.1970). In his treatise, Professor Wigmore recites that before a witness can testify concerning the value of a person's services, that witness must have personal familiarity with the commercial value of those services. A witness may gain personal knowledge of the value of services through observation of the value placed upon those services in other transactions. This familiarity with value, however, cannot be known through relying upon the trustworthiness of another's assertions of value. Acknowledging that the distinction between these sources of knowledge is difficult, Professor Wigmore declares:

The distinction depends upon whether the utterances heard represent in *themselves* a series of individual offers or transactions, or

are merely reports of the net result of offers or transactions already made. *Id.* at § 719(2).

To give this conceptual distinction a concrete setting, Professor Wigmore gives the following example:

Thus, if A sits in a merchant's office and listens to the terms accepted and rejected for a dozen articles, he acquires a firsthand knowledge of value; but if he goes in and asks the merchant to tell him the value of a given article, his knowledge is based on a belief in the truth of the merchant's assertion. In the former case, his knowledge is not based on hearsay. But in the latter case his knowledge is based on the hearsay assertion of another person, and therefore is inadmissible . . . . *Id.* (footnotes omitted).

Dr. Hansen's testimony was based not upon his observation of the wage scale for interior designers, but upon the assertions of others concerning that wage scale. Clearly, his opinion testimony concerning Ms. Grantham's future earning capabilities in the interior design field was inadmissible hearsay, in the same manner that A's testimony, in Professor Wigmore's example, would be inadmissible if it was based solely on the belief in the truth of another's assertion.

A review of our cases indicates that we have accepted similar offers of remittitur in the past.

"It is the law that where the portion of a jury's verdict tainted with misconduct, or improperly arrived at, is capable of definite and accurate ascertainment, and where the jury acted free from prejudice and passion, a remittitur of the portion so tainted or improperly arrived at will cure the error, and the part of the verdict free from the taint of misconduct and properly arrived at will be permitted to stand." *Texas Employer's Insurance Association v. Lightfoot,* 139 Tex. 304, 309, 162 S.W.2d 929, 931 (1942). *See also Ogle v. Craig,* 464 S.W.2d 95, 98 (Tex.1971).

In the instant case, the jury's award to Ms. Grantham for the other elements of her injuries were neither addressed, nor tainted, by Dr. Hansen's inadmissible testimony. Accordingly, Ms. Grantham's offer to remit that part of the award that was the subject of Dr. Hansen's inadmissible testimony is accepted. In all other respects, Ms. Grantham's motion for rehearing is overruled.

Accordingly, judgment is now rendered as follows:

(a) The judgment heretofore rendered by this Court is set aside.

(b) The judgment of the court of civil appeals is reversed.

(c) The judgment of the trial court is modified so as to award Nancy Grantham a recovery against William Moore for actual damages in the amount of $16,976.44, with interest thereon at the rate of nine percent per annum from November 28, 1977, and as so modified, the judgment of the trial court is affirmed.

(d) The costs are apportioned one-half to be paid by petitioner, William Moore, and one-half to be paid by respondent, Nancy Grantham.