Joe M. POTEET, Appellant,

v.

The CITY OF PALESTINE, Appellee.

No. 1444.

Court of Civil Appeals of Texas, Tyler.

July 16, 1981.

Jerry L. Calhoon, McDonald, Calhoon & Kolstad, Palestine, for appellant.

Bascom W. Bentley, III, City Atty., Palestine, Wm. O. Goodman, Asst. Atty. Gen., Austin, for appellee.

MOORE, Justice.

This is an age discrimination suit. Appellant, Joe M. Poteet, age 40, instituted suit against appellee, City of Palestine, seeking to compel the City to allow him to take a written examination in connection with his application for employment as a police officer in the City Police Department.[1] He alleged in his petition that the examination was scheduled to have been given on No-

---

1. Appellant's cause of action for damages was severed and the cause proceeded to trial solely on the liability question.

vember 18, 1978, but when he appeared the City refused to allow him to take the examination because he was above the age of 36 without prior police experience. As grounds for a cause of action he alleged the City was in violation of 29 U.S.C. sec. 621–634 (1975), known as the Age Discrimination in Employment Act, which declares in sec. 623(a)(1) that it shall be unlawful to fail or refuse to hire any individual or otherwise discriminate against any individual because of such individual's age. At the beginning of the trial the City conceded that based upon previous admissions made by the City, appellant had established a prima facie case of age discrimination. The City, however, denied generally the allegations of the petition and announced that it would assume the burden of proving an affirmative defense in accordance with sec. 623(f)(1) of the Act which provides for an affirmative defense in situations where age is a bona fide occupational qualification (BFOQ) reasonably necessary to the normal operation of a particular business. After a hearing, the trial court, sitting without a jury, found that the City had established its defense and entered a take-nothing judgment against appellant from which he perfected this appeal.

We affirm.

It is undisputed that the City of Palestine, through its civil service commission, refused to hire the appellant for the position of beginning police officer solely because at the time of his application he was forty (40) years of age. The City's refusal to hire was predicated upon the Firemen's and Policemen's Civil Service Law, Tex. Rev.Civ.Stat.Ann., art. 1269m, sec. 9 (Vernon Supp. 1980). Section 9 of the statute provides in part as follows:

No person shall be certified as eligible for a beginning position with a police department who has reached his thirty-six (36) birthday unless the applicant has at least five (5) years prior experience as a police officer.

The Age Discrimination in Employment Act, sec. 623(f)(1) provides for a defense to the Act as follows:

It shall not be unlawful for an employer, employment agency, or labor organization—(1) to take any action otherwise prohibited under sections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business. . . .

The trial court filed findings of fact and conclusions of law. Under the findings of fact, the trial court found that (1) the defendant refused to hire plaintiff as a beginning police officer because at the time of his application plaintiff had reached his fortieth (40) birthday and did not have five (5) years prior experience as a peace officer; (2) the essence of the business of the Police Department of the City of Palestine is the protection and public safety of the citizens of the City of Palestine; (3) the duties of patrolmen for the Police Department of the City of Palestine are physiologically and psychologically demanding; (4) there is an adverse relationship between the ability to perform these duties and the aging process; (5) the public safety of the citizens of the City of Palestine would be endangered to some degree by hiring persons for beginning police officers over the age of thirty-six (36) without prior law enforcement experience; and (6) the defendant has a factual basis for believing that it is impossible or impractical to deal with persons over the age of thirty-six (36) on an individualized basis because medical science cannot accurately or reliably separate chronological from functional or physiological age. The trial court concluded as a matter of law that: (1) the requirement that an applicant for a beginning position with the Police Department of the City of Palestine cannot have reached his thirty-sixth (36) birthday unless said applicant has had five (5) years prior experience as a peace officer is a bona fide occupational qualification reasonably necessary to the normal operation of the Police Department of the City of Palestine and therefore lawful within the meaning of 29 U.S.C. sec. 623(f)(1); and (2) the refusal of defendant to hire plaintiff because of plaintiff's age and lack of experience did

not violate 29 U.S.C. sec. 623(a)(1) and plaintiff therefore shall take nothing by his suit.

Appellant's points one and four are "no evidence" points, calling for a reversal and remand on the ground that there is no evidence to support the trial court's finding that the City established its BFOQ defense. Points three and six are identical in legal effect to points one and three, although worded somewhat differently, in that they call for a reversal and rendition in favor of appellant on the ground that the evidence conclusively shows that the City violated the Age Discrimination Act (ADA).

Before discussing appellant's points of error we will undertake to review briefly the state of the law regarding the factual elements necessary to a successful BFOQ defense in an age discrimination case.

The United States Supreme Court has not ruled, and the circuit courts are sharply divided, on the issue of precisely what a defendant-employer must show in order to establish a bona fide occupational qualification (BFOQ) defense. The leading cases are *Hodgson v. Greyhound Lines*, 499 F.2d 859 (7th Cir. 1974) cert. denied 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975); and *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976).

Both cases involved the refusal of intercity bus companies to hire applicants for the position of driver who had reached their fortieth birthdays. Although a BFOQ defense was found valid in each case, the courts differed on the exact elements necessary to a complete defense. Both courts found that the essence of Greyhound's and Tamiami's business was the safe transportation of passengers and acknowledged that the presence of the "safety factor" lessens the burden placed upon the employer to show that his employment criteria are job related. *Hodgson, supra* at 862; *Tamiami, supra* at 235, 236, 238.

■ The circuit courts agree that the statutory language, "reasonably necessary to the normal operation of the particular business," means that the job qualification must relate to the essence of the business and not be merely tangential to it. *Diaz v. Pan American World Airlines, Inc.*, 442 F.2d 385 (5th Cir. 1971); *Hodges v. Greyhound Lines, Inc., supra; Usery v. Tamiami Trail Tours, Inc., supra*. In the case at bar the undisputed proof shows that the essence of the City's business was the operation of an efficient police department for the protection of the public.

In *Greyhound* the Seventh Circuit concluded that when the safety factor is present, the employer need show only that the elimination of the qualification (age) will result in a minimal increase in the risk of harm. As we interpret it, the case held that if it is shown that public safety would be jeopardized to some degree by eliminating the employer's hiring policy, the contended discrimination will be held to be a bona fide occupational qualification. In *Tamiami, supra*, the Fifth Circuit goes further and imposes the additional burden of showing that there is "no practical way reliably to differentiate the qualified from the unqualified applicants in that case (over 40)." Thus, the Fifth Circuit held that in addition to the public safety factor, the employer is required to offer additional evidence showing that even though physiological and psychological changes that accompany the aging process decrease a person's ability to drive safely, the employer may not discriminate against an older driver unless the evidence shows that the most refined examinations cannot detect these changes.

■ Recently, the Fourth Circuit, in the case of *Arritt v. Grisell*, 567 F.2d 1267, 1271 (1977), made the following holding:

We believe, however, that the proper standard is the two-pronged test formulated in *Usery v. Tamiami Trail Tours*, 531 F.2d 224 (5 Cir. 1976): that the burden is on the employer to show (1) that the bfoq which it invokes is reasonably necessary to the essence of its business (here the operation of an efficient police department for the protection of the public), and (2) that the employer has reasonable cause i. e., a factual basis for believ-

ing that all or substantially all persons within the class (in our case, persons over 35 years of age) would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over the age limit on an individualized basis.

Accordingly, we hold that in order for the City to establish a BFOQ defense, both elements of the two-prong test must be supported by the evidence.

With regard to the first of the two-prong test, the trial court found that the public safety of the citizens of the City would be endangered to some degree by hiring persons who have no prior law enforcement experience as beginning officers after the age of thirty-six (36).[2] With regard to the second prong, the trial court found that the City had a factual basis for believing that it is impossible or impracticable to deal with persons over the age of 36 on an individual basis because medical science cannot accurately or reliably separate chronological from functional or physiological age.

■ In deciding whether there is any evidence to support the judgment, the appellate court must view the evidence in its most favorable light in support of the underlying finding of the vital fact, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences which are contrary to the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364 (1960).

■ In support of its BFOQ defense the City called as a witness Dr. P. R. Jeanneret, a consulting psychologist, who testified that prior to becoming a psychologist he was employed as a policeman. He testified that a major portion of his practice in recent years had been in the development and validation of the subsection procedures for several law enforcement agencies in Texas, including the Texas Department of Public

Safety and the Police Department of the City of Houston, Texas. He testified extensively regarding his studies. These studies, he testified led to the development of physical selection standards for beginning police officers. The purpose of the studies was to determine what the maximum age limit should be for beginning policemen in order to make sure that the beginning policeman would be capable of performing his duties in such a manner that the public safety would not be jeopardized.

Based on these studies, his personal observations, his personal experience as a police officer, and his expertise as an industrial psychologist specializing in employee selection procedures, Dr. Jeanneret offered the following opinions:

(A) that the most important physical demands associated with a police officer's job are: (1) running with or without obstacles in path; (2) running up and down stairs; (3) climbing over obstacles; (4) climbing up ladders; (5) climbing through windows; (6) lifting and/or carrying things; (7) jumping over or across obstacles; (8) jumping down from a height; (9) dragging individuals; (10) forcing open doors; (11) balancing on a beam/fence without support; (12) pushing a stalled auto; (13) pulling self up using arms only; (14) handling actor resistance and assault; (15) restraining actor trying to flee; (16) handcuffing resisting actor; (17) putting resisting actor in patrol car; (18) restraining disturbed/drugged actors; (19) working overtime shift; (20) pursuit driving; and (21) using firearms;

(B) that these physical activities are universal to police work;

(C) that these activities are physiologically and psychologically demanding;

(D) that there is evidence of an adverse relationship between the ability to do some of these physical tasks and the aging process; and

2. Appellant does not challenge the constitutionality of the Texas Statute, art. 1269m, *supra*, prohibiting the certification of a beginning po-

liceman who is over the age of 36 with no prior police experience.

(E) that 36 should be a maximum entry level requirement for an entry level police officer in order to protect the public.

Ken Berry, the present City Manager of the City of Palestine and a former policeman for approximately twenty years testified that the physical tasks of a policeman in the City of Palestine were no different from those in other cities. He testified that the tasks required a policeman were practically the same as those identified by Dr. Jeanneret and that the citizens of Palestine would be impaired greatly as a result of a policeman's not being able to perform those tasks. He concluded his testimony by stating that, in his opinion, the public safety of the citizens of Palestine would be impaired by hiring beginning policemen over the age of thirty-six (36).

Hunter H. Williams, the Chief of Police of the City with twenty-nine years of experience, testified that in his opinion the hiring of a person over the age of thirty-six (36) would to a "certain degree" impair the safety of the City of Palestine. Lt. John Yarbrough, Jr., a policeman with eleven years experience, gave testimony to the same effect.

In our view, the foregoing testimony constitutes sufficient evidence of probative force to support the first prong of the *Tamiami* test that age is related to the essence of the City's business and that a limitation of age thirty-six (36) is reasonable in light of the safety risks. *Usery v. Tamiami, supra.*

With regard to the second prong required by *Tamiami*, City had the burden of proving that it had a factual basis for believing that there was no practicable and reliable way to differentiate between the qualified and the unqualified applicants who were over the age of thirty-six (36). In this connection the City called as a witness, Dr. John J. Costanzi, a professor of medicine of the University of Texas. Dr. Costanzi testified that a person's ability to perform the tasks of a policeman decreases gradually from age 30 and dramatically over age 40 and that medical science cannot accurately or reliably predict which persons over 33 to 40 years of age will be subject to the risk of task failure and which ones will not. He testified that beginning at age 30 and rapidly accelerating around age 40, there are microscopic changes occurring in the body that cannot be detected by a physical examination which nonetheless adversely impact a person's ability to perform strenuous physical tasks required of a beginning policeman. He testified that in his opinion the cut-off age for beginning policemen should be somewhere in the 33–40 age range.

Dr. Fred Felder, a local physician called by the City, testified that in his 48 years of practice, he had probably conducted 50,000 to 100,000 physical examinations. He testified that the aging process begins to manifest itself around age 25 and agreed with Dr. Costanzi that about 50 percent of people over 30 have diminished or decreased capacity to perform strenuous physical functions. He testified repeatedly that there is no accurate or reliable way that medical science can distinguish functional from chronological age and that men over 40 are more likely to have "surprising" things happen to them.

It is our view that the foregoing expert medical testimony constitutes ample evidence showing that there is no practical way to detect the relevant physiological and psychological changes with sufficient reliability to meet the special safety obligations cast upon a beginning policeman.

Under the record before us, we cannot agree with appellant's contention that there is no evidence to support the elements of the City's BFOQ defense. It therefore follows that we cannot agree with the contention that the evidence conclusively shows that the City was in violation of the Age Discrimination in Employment Act. Points one, three, four and six are overruled.

In response to the second and fifth points, we have carefully examined the entire record, and after having done so we find no merit in appellant's contention that the evidence is factually insufficient to sup-

port the judgment. Accordingly, these points are overruled.

Under points seven through twenty-eight appellant seeks a reversal and remand on the ground that the trial court committed reversible error in overruling his "hearsay" objections to the testimony of Dr. J. R. Jeanneret. Appellant also contends that the court erred in overruling his "hearsay" objections to various statistical exhibits prepared by Dr. Jeanneret on the ground that the exhibits amounted to hearsay.

In connection with these points, the record shows that as a result of his studies and research Dr. Jeanneret prepared various statistical exhibits listing various physical activities required by a policeman and what affect the aging process has on the performance of such activities. Based upon the activities shown by the exhibits and based upon his own observations and personal experience as a police officer, he testified that he was of the opinion that there was an adverse relationship between the strenuous tasks required of a policeman and the aging process. He testified that considering such adverse relationship and the safety of the public, he was of the opinion that age thirty-six should be the maximum entry level for beginning policemen.

■ Texas courts have followed the general rule that where it appears that an expert witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex.1980); *Slaughter v. Abilene State School*, 561 S.W.2d 789, 791 (Tex.1977). On the other hand, where the expert witness' testimony is based *solely* on hearsay, his testimony amounts to hearsay and is not admissible. *Moore v. Grantham, supra.*

■ City does not dispute appellant's contention that four of the five methodologies employed by Dr. Jeanneret were made by either questionnaire surveys or personal interview techniques. However, the record shows that one of the five methdologies employed by Dr. Jeanneret was based on his personal observation of policemen in Hous-

ton and elsewhere, as well as his own experience as a police officer. Thus, the record clearly shows that his testimony was not predicated solely on hearsay. Upon applying the rules announced in the last cited cases, neither Dr. Jeanneret's testimony nor the exhibits constitute hearsay and there-fore no reversible error is reflected in the action of the trial court in overruling appellant's objection thereto on that ground.

■ We find no merit in appellant's contention that neither the testimony of Dr. Jeanneret nor the statistical exhibits prepared by him were admissible because no predicate was laid establishing that the physical requirements of policemen were the same in the City of Palestine as they were in other cities surveyed by Dr. Jeanneret. There is ample evidence in the record to support the trial court's implied finding that the physical requirements were the same irrespective of the locality. Points seven through twenty-eight are overruled.

Finally, under the twenty-ninth point, appellant seeks a reversal and a remand on the ground that the trial court erred in overruling his "hearsay" objection to the City's exhibit 3 and also erred in admitting testimony of Dr. John J. Costanzi on the ground his testimony was based upon hearsay statements contained in City's exhibit 3.

In connection with Dr. Costanzi's deposition testimony, City offered its exhibit 3, a document styled "Evaluation of Houston Police Department Medical Requirements by John J. Costanzi." The exhibit contained a list of nineteen physical activities usually performed by policemen in the course of their duties. Dr. Costanzi testified he prepared exhibit 3 after obtaining the list of police activities from Dr. Jeanneret while they were engaged in making a survey of the medical requirements for the Houston Police Department. At the time Dr. Costanzi's deposition testimony was offered in evidence, Dr. Jeanneret had not testified in the case. Appellant objected to the exhibit on the ground that the physical activities required of policemen constituted hearsay. Thereupon, counsel for the City assured the court that evidence of each of

the physical activities required of policemen would be proved up later. In response, the trial judge stated that upon that condition, the exhibit would be admitted. Thereafter, Dr. Costanzi was permitted to testify over appellant's "hearsay" objection that in his opinion it would be impossible or impracticable to determine whether persons over the age of thirty-six would be able to perform safely and efficiently the various activities required of a policeman since medical science cannot accurately or reliably separate chronological from functional or physiological age.

The record reveals that the City adduced other testimony which, when taken collectively, shows that in the performance of their duties policemen are required to perform each of the physical activities listed in exhibit 3.

Under the circumstances, we believe the questions propounded to Dr. Costanzi were in the nature of hypothetical questions in which he was allowed to assume that the physical activities usually performed by policemen were the same as those delineated in City's exhibit 3. The remarks of the trial judge seem to support our conclusion in this regard.

 As stated by Professor Ray in his treatise on evidence with respect to the proper foundation for hypothetical questions:

> It would be an obvious waste of time as well as misleading to ask the witness' opinion upon facts which there is no fair possibility of the jury accepting as true. The question, therefore, should embody only facts which the evidence fairly tends to prove. This does not mean, however, that the facts must be undisputed, or even clearly established. In fact it is not always essential that the facts assumed should have already been testified to. The court may, in its discretion, permit counsel to include facts in support of which he proposes to offer evidence at a later state. 2 R. Ray, Texas Law of Evidence § 1404 (Texas Practice, 1980).

Inasmuch as the City adduced other testimony showing that policemen were required to perform the same physical activities as those listed in the exhibit in question, we fail to perceive how the admission of the exhibit, even if hearsay, could have resulted in any harm to appellant. Tex.R.Civ.P. 434. Nor do we believe that the trial court erred in admitting Dr. Costanzi's testimony. While Dr. Costanzi's testimony was predicated on the assumption that policemen were required to perform the physical tasks listed in exhibit 3, the record contains other evidence proving up the same facts. Consequently, Dr. Costanzi's opinion testimony is supported by other evidence, other than that contained in exhibit 3, and for this reason would not be objectionable as hearsay. Appellant's twenty-ninth point is overruled.

The judgment of the trial court is affirmed.