ROYAL INDEMNITY CO., et al., Appellants,

v.

LITTLE JOE'S CATFISH INN, INC., et al., Appellees.

No. 16773.

Court of Appeals of Texas, San Antonio.

June 23, 1982.

Rehearing Denied July 27, 1982.

Thomas H. Crofts, Jr., San Antonio, for appellants.

Sam Bashara, San Antonio, for appellees.

Before KLINGEMAN, BUTTS and CLARK, JJ.

## OPINION

KLINGEMAN, Justice.

Appellants, insurance companies,[1] appeal an adverse verdict and judgment against them imposing contractual liability under six (6) insurance policies for damages to a building and its contents as a result of a fire. The property involved in the fire was located on S. W. Military Highway in San Antonio.

The insurance companies denied coverage on the basis of an accusation that the owner of the property involved had produced the fire by his own act, design, or procurement. Trial was to a jury which resolved that issue adversely to appellants. The trial

court rendered judgment on the jury's verdict awarding appellee Southwest Church Builders Pension Trust the sum of $78,825.73 for damage to the building and awarding appellee Little Joe's Catfish Inn (1) $33,579.03 for damage to the contents and (2) $11,400 for business interruption damages. On this appeal appellant appeals only that portion of the judgment awarding (a) the Church Building Trust a recovery of $78,825.73 which amount the jury answered and issued to be the cost to repair the building and (b) Little Joe's Catfish Inn's recovery of $11,400 which the jury found to be loss sustained through rent and salary expenses during the interruption of business.

■ Appellants assert two "no evidence" points of error. In viewing appellants' no evidence points of error we may consider only that evidence, if any, which viewed in its most favorable light supports the jury's finding and we must disregard all evidence which would lead to a contrary result. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821, (Tex.1965); *Biggers v. Continental Bus Systems*, 157 Tex. 351, 303 S.W.2d 359 (1957); *Frost National Bank v. Kayton*, 526 S.W.2d 654 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.).[2]

Appellants' first point of error asserts that the trial court erred in rendering judgment that appellee Southwest Church Builders Pension Trust recover $78,825.73 because there is no evidence to support the jury answer that such sum was the cost to repair the damages to the building. Appellants, in support of their first point of error, urge that the only evidence offered by appellee Building Trust in the matter of repairs to the building was the expert opinion of Arthur Nichols and an exhibit introduced

1. Royal Indemnity Company, Westchester Fire Insurance Company, and St. Paul Insurance Company.

2. No evidence points of error must and may only be sustained when the record discloses one of the following: (a) a complete absence of evidence of a vital fact; (b) the court is barred

by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more that a mere scintilla; (d) the evidence established conclusively the opposite of the vital fact. *No Evidence and Insufficient Evidence*, 38 Texas L.Rev. 361 (1960).

into evidence as plaintiff's exhibit 7. They assert that the exhibit is a list composed by an estimator who had surveyed the damaged building and listed the items to be repaired, that Nichols was in effect testifying as to values composed by such estimator and that all such evidence was hearsay and lacked any probative value. We do not construe the evidence in the record in accordance with appellants' contention. Arthur Nichols who was called as an expert witness by appellee was an insurance adjustor with over 50 years of experience. For approximately 18 years he had worked as a branch manager and senior adjustor for General Adjustment Bureau who ordinarily represents insurance companies in these types of claims. He had adjusted losses on restaurants on numerous occasions and had extensive experience in adjusting building losses along with a comprehensive knowledge of building costs. For over 18 years he had participated in the adjustment of hundreds of San Antonio buildings. Nichols prepared plaintiff's exhibit 6 which was a detailed list of damages caused to the contents of Little Joe's Catfish Inn and plaintiff's exhibit 7 which was a detailed statement of damage caused to the building involved. He personally inspected the building in question and the detailed specifications contained in Plaintiff's Exhibit 7 are the result of his personal observations.

Both appellants and appellees rely on *Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980). In *Moore*, the Supreme Court pointed out that the Court has yet to adopt a rule permitting an expert opinion testimony to be based solely on hearsay, and refused to do so in that case. The Court further stated that courts have applied a more liberal approach in allowing an expert opinion testimony to be based partially on hearsay and partially on personal knowledge and cited a number of cases in support of this position. The Supreme Court then discussed their decision in *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977) and said: "In permitting the doctor's testimony into evidence, we declared our understanding of the state of the law in regard to *expert opinion testimony*: 'Texas courts

have followed the general rule that *where it appears a witness' testimony is predicated both upon personal knowledge and hearsay his testimony is admissible.*' " 599 S.W.2d at 289 (quoting *Slaughter v. Abilene State School, supra.*)

The case before us falls in the category of *Slaughter* and is distinguishable from *Moore*. In *Moore*, Ms. Grantham was unable to continue working in the area of interior design because of her injury. In an effort to meet her burden of proof in relation to her loss of future earning capacity, Ms. Grantham called Dr. Carl Hanson as her expert witness. Dr. Hanson was qualified as an expert in vocational rehabilitation, but despite his qualifications in vocational rehabilitation, he admitted that he had no personal knowledge of or contact with the profession of interior design. Dr. Hanson also admitted he had no personal knowledge of the wage scale in the interior design field. Thus his opinion about her earning potential was based solely upon hearsay without personal knowledge. The Supreme Court held that it was error for the trial court to admit such testimony concerning Ms. Grantham's earning capacity in the field of interior design, in which he had no personal knowledge.

Mr. Nichols who prepared plaintiff's exhibit 7 gave the following testimony:

Q: Have you had experience with adjusting losses to buildings before, construction costs and that sort of thing?

A: Yes, extensively.

Q: How many buildings would you say you have participated in the cost adjustment or appraisal of in, say, over the last 18 years?

A: Hundreds.

Q: Let me show you what has been marked as Plaintiff's Exhibit 7, and I will ask you if you can identify that information.

A: Yes. Again this is in my own handwriting.

Q: And did you personally go and inspect the premises in order to come up with these detailed specifications?

A: Yes, I did.

\* \* \* \* \* \*

Q: Based on your experience, based upon your contact with estimators, the two estimators, do you have an opinion as to whether the figures contained on Plaintiff's Exhibit 7 represent the cost to repair the damage to the building located at 7050 Southwest Military Drive resulting from the fires of March 17 and March 21, 1976 with material of a like kind and quality and within a reasonable period of time after the loss?

First of all, do you have an opinion?

A: Yes, I do. . . .

\* \* \* \* \* \*

Q: Would you tell the judge—you have told us you have an opinion. Would you tell the Court and the jury what the opinion is based on?

A: It is based on experience, plus the opinion of an expert.

Q: Would that be more than one expert?

A: It's two.

Q: Would you tell the jury, then, in your opinion, whether or not the figures contained on Plaintiff's Exhibit 7 represent the fair cost to repair the damage to the building located at 7050 Southwest Military Drive as a result of the fires on March 17 and March 21 with materials of a like kind and quality and within a reasonable time after the loss?

A: I believe that to be correct.

\* \* \* \* \* \*

MR. BASHARA: Again, we move the admission of Plaintiff's 7 into evidence, your Honor.

MR. BALL: Same objection, your Honor, that is, no proper predicate has been laid and the Exhibit is based on hearsay.

THE COURT: Again I will ask the witness is this Exhibit 7 that has been tendered to the Court also based on your experience?

THE WITNESS: It is, your Honor.

THE COURT: Of how many years?

THE WITNESS: Fifty. Fifty some odd.

THE COURT: Overruled. Proceed.

A markedly similar case to the one before us is *United States Fire Ins. Co. v. Stricklin*, 556 S.W.2d 575 (Tex.Civ.App—Dallas 1977, writ ref'd n.r.e.) where an expert opinion of an independent insurance adjustor was permitted into evidence, the court said:

> Every expert's opinion is, necessarily, in most instances, based in part upon hearsay in that some data obtained from various sources is necessarily hearsay. Specifically, here, Crawford testified to having used "cost guides that are accepted by various area contractors" and telephone conversations with contractors. Although the knowledge obtained in this manner is hearsay, it is one way that an expert on repair costs can keep current on construction costs. This method is perfectly permissible. Since Crawford's credentials as an expert were unchallenged and since any such expert must in part utilize hearsay as a basis for the opinion, the trial court should have admitted the evidence. The better view is to admit the testimony in such a situation, thus leaving to the jury the weight to be given the opinion rather than excluding it. . . . Here, Crawford's opinion was also based upon "facts" obtained from his personal observation of the damage and from his personal knowledge of repair costs. We conclude, therefore, that an expert's opinion is admissible notwithstanding that it may have been based in part on hearsay information.

556 S.W.2d at 580. *See also State v. Oakley*, 163 Tex. 463, 356 S.W.2d 909 (1962); *Norris v. Lancaster*, 280 S.W. 574, 476 (Tex. Comm'n App. 1926, opinion adopted); *Parr v. Tagco Industries*, 620 S.W.2d 200 (Tex. Civ.App.—Amarillo 1981, no writ).[3]

3. Appellants also rely on *Calhoun v. United States Fire Ins. Co.*, 489 S.W.2d 359 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.). This case is distinguishable. In *Calhoun* the testimony of an architectural engineer as a witness was struck because he admitted that he was not familiar within his own knowledge of the

The trial court did not err in admitting Nichols' testimony into evidence and his testimony sufficiently supports the jury's answer to special issue number two. Appellant's first point of error is overruled.

By their second point of error appellants assert that the trial court erred in rendering judgment that Little Joe's Catfish Inn recover the sum of $11,400.00 for business interruption losses sustained because there is no evidence that when the business was interrupted by fire Little Joe's sustained any actual loss through payment of rent or salaries.

As submitted to the jury, Little Joe's claim under the earnings coverage provision was limited to actual losses through rent and salary expenses for the length of time that would be required to rebuild, repair, or replace the property damaged or destroyed using due diligence. This limitation resulted from the fact that Little Joe's had never shown a net profit during the months preceding the fire. Little Joe's did not resume business after the fire.

The lease here involved is a written lease dated December 8, 1975. Such lease was executed by Foy A. Farris and wife, E. Louise Farris as Lessors, for Southwest Church Building Pension Trust and also by Foy A. Farris and wife, E. Louise Farris as Lessees for Little Joe's Catfish Inn, Inc. The Farrises are listed in appellees' brief as owners of appellees. The lease is for a term of 20 years and provides for monthly rentals of $1,800.00. It is undisputed that Little Joe's did not pay any rents after the fire nor were any salaries paid. Although rent was not paid, the Building Trust carried the rent obligation as an account receivable. Little Joe's carried it as an account payable. This is also basically true of salaries. While the Farrises were salaried employees of Little Joe's, such salaries were not paid but carried as liabilities of Little Joe's Catfish Inn. The controlling question is whether under these circumstances appellees sustained any actual loss of earnings under the policy provisions.

The policy issued to Little Joe's contained the following applicable provision

cost of repairs involved. We do not have this

3. When this policy covers EARNINGS, this Company shall be liable for the ACTUAL LOSS SUSTAINED by the Insured resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property by the peril(s) insured against, during the term of this policy, on the premises described, ... for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed.... Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss.

It is appellees' contention that neither rent nor salaries were paid because there was no monies available; that the reason there was no monies available was that the insurance companies wrongfully refused to pay the monies they were obligated to pay under the policy for business interruption losses sustained; that it would be inequitable and unfair to allow the insurance companies to profit by their wrongful and unlawful conduct; and that had the insurance carriers honored this valid claim the liabilities would have been retired and no suit required. Neither appellants nor appellees cite any authority which is directly on point and there appears to be a dearth of applicable authorities in Texas.

Appellants assert that appellee has sustained no actual loss of earnings under the terms and provisions of the policy for a number of reasons. Appellants maintain that under the lease there was no obligation of lessee to pay any rents after the occurrance of the fire, because the lease contains a covenant to repair or rebuild which gives the lessor (the Building Trust) two options. Under either of such options the lessee is absolved of the obligation to pay rent dur-

situation here.

ing the period of interruption. Appellants urge that had the Building Trust chosen to repair Little Joe's premises, the rent would have been abated for the period of time taken to repair or rebuild the damaged premises. Second, the appellants assert that under the second option contained in the lease if the lessor had chosen not to repair the leased premises, the lease would have terminated on the day the fire occurred and Little Joe's would have had no obligation to pay any rent. In support of this contention appellants rely on *Japhet v. Polemanakos*, 160 S.W. 416, 417 (Tex.Civ. App.—El Paso 1913, writ dism'd). *See also* 35 TEX.JUR.2d, Landlord & Tenants, § 106. *Japhet* held that the lessee of a freehold is liable for rent even if the improvements are destroyed by fire, unless the lease expressly releases the lessee from such liability, or the lessor has covenanted to rebuild in case of fire. The lease here involved contains a covenant to repair which gives the lessor two options as hereinafter set forth. Paragraph 12 provides as follows:

## DAMAGE BY FIRE, EXPLOSION OR OTHER CASUALTY:

If during the term of this lease the improvements of the leased premises shall be damaged by fire, explosion, windstorm or other casualty, Lessee shall give Lessor prompt notice in writing of such damage. If it reasonably appears to Lessor that such damage can be repaired with reasonable diligence, and at reasonable expense within two hundred seventy days (270 days) from date of the damage, Lessor shall proceed promptly to repair such damage, so as to restore the improvements of the leased premises to their condition prior to such damage. But, if it reasonably appears that such damage cannot be so repaired, and the improvements so restored within a period of 270 days from the date of the damage, the lease shall terminate as the date of the damage, and the rent shall be prorated to that date. Unless Lessor notifies Lessee in writing within 30 days of date of notice of damage that it has elected to terminate the lease as of the date of the damage, it will be resumed (sic) that the Lessor has elected to make the required repairs.

Appellees assert that there is no evidence that the Lessor ever notified the Lessee that it had elected to terminate the lease. Since the same persons, Foy A. Farris and wife, E. Louise Farris, executed the lease for both lessor and lessee in a managerial or proprietory capacity, we do not regard the requisite notice as of significant materiality, and it can be presumed that if any kind of notice was required between lessor and lessee the Farrises had such notice.

We hold that under the record before us and the applicable lease the lessee had no obligation to pay any rent to lessor after the fire and in fact, did not pay any rent. There is no evidence of any loss of earning sustained in this regard as that term is defined in the policy.

The same basic terms and considerations apply to the salary matter. The lessee, Little Joe's Inn did not resume operation after the fire. The salaries involved are the salaries from Little Joe's Inn operated by Foy A. Farris and wife, E. Louise Farris, as operators, to Foy A. Farris and wife, E. Louise Farris, as officers and employees. These salaries were never paid after the fire and there is no evidence that Little Joe's Catfish Inn made any payroll payments after the fire to anyone. It is our opinion that in order for there to be a liability for business interruption loss, the claimant must show an actual monetary loss. *See Berkeley Inn Inc. v. Centennial Ins. Co.*, 282 Pa.Super. 207, 422 A.2d 1078, 1080 (1980); *A & S Corp. v. Centennial Ins. Co.*, 242 F.Supp. 584, 589 (N.D.1965).

We hold that under the terms of the provisions of the policy covering business interruption loss sustained, there is no basis for the award of expenses never incurred by appellees. Appellants' second point of error is sustained.

The judgment in favor of Southwest Building Pension Trust against appellants

of $78,825.73 for damages to the building premises is affirmed. The judgment in favor of Little Joe's Catfish Inn against appellant in the amount of $11,400.00 for actual loss of earnings sustained from business interruption is reversed and judgment is here rendered that Little Joe's Catfish Inn take nothing on its claim against appellants for loss of business earnings.