Richard A. **LIPTAK** and Darthy Liptak, **Appellants,**

v.

Daphne G.T. **PENSABENE** and Constance **Troulinos,** **Appellees.**

No. 12–86–0249–CV.

Court of Appeals of Texas, Tyler.

Sept. 11, 1987.

Charles Crow, Tyler, for appellants.

Donald Ross Patterson, Tyler, for appellees.

COLLEY, Justice.

This is a DTPA suit.[1] Plaintiffs/appellees Constance Troulinos and Daphne G.T.

1. Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.-41-.63 (Vernon Supp.1987).

Pensabene, mother and daughter, recovered a judgment for actual and treble damages and attorneys' fees against defendants/appellants Richard A. Liptak and Darthy Liptak based on a jury verdict favorable to appellees. We affirm the judgment.

Appellants present eight points of error, contending: (a) the court erred in submitting special issues numbers 1, 3, and 7 as framed; (b) the evidence is factually insufficient to support the affirmative answers of the jury to special issues numbers 1, 2, 5, 6, 7, and 12; (c) the affirmative answers to special issues numbers 1 and 7 are in fatal conflict with the negative answer of the jury to special issue number 3, precluding judgment in favor of appellees; (d) the court erred in overruling appellant's objection to William Routon's testimony as to a reasonable attorney's fee for appellees; and (e) the court erred in submitting special issue number 10 because there is no evidence that the estimates by appellees' expert witnesses of the cost of repairs were reasonable and necessary.

Appellants Dr. Liptak and his wife, Darthy Liptak, sold a house and lot (2.75 acres) to appellees on May 10, 1984, under a contract of sale. The purchase price was $125,000.00. The sales contract required appellants to furnish appellees before the closing "a written report by a Structural Pest Control Business—stating that there is no visible evidence of active termites or visible damage to the improvements from the same in need of repair." The property was inspected by an employee of A–1 Lone Star Termite & Pest Control, a business owned by Jerry King. After the inspection, King signed a written report stating in part, "[n]o visible evidence of infestation from wood destroying insects was observed."

The evidence conclusively establishes that the structure of the house was heavily damaged by termite activity occurring over a period of four to ten years preceding the sale, and that at the time of the sale, it was infested with live termites. One expert witness, Fred Minton, an employee of the Texas Structural Pest Control Board, testified the termites that damaged the house were of a species known as "subterranean" that "eat" from the ground up through wood structures and that in his opinion, based on the damages he observed, the infestation had existed in the house from four to ten years. It is undisputed that appellees discovered the presence of the termites within two weeks following the sale.

Both appellants denied that they had any pre-sale knowledge that the house was infested by termites, and there is no direct evidence that they did. Dr. Liptak testified that during the time he and his wife lived in the house, from 1978 to September 1982, he painted most of the interior of the house, including the walls and areas where extensive termite damage had occurred such as the bathrooms, bedrooms and family room. Dr. Liptak also testified that he lived in the house periodically between September 1982 until the sale of the house on May 10, 1984.

Appellee Troulinos testified that about two weeks after the sale, she noticed a mud tunnel in the ceiling of a bathroom located in the "middle" of the house and observed termites coming out of that tunnel. She related that shortly thereafter, paneling in the breakfast room area "popped" loose and that she saw termites in another bathroom. She further testified that the family room ceiling was "sinking down," and that the wall boards joining the brick fireplace separated from the fireplace.

Appellee Pensabene testified that termites swarmed in the house within two weeks after the sale. She further testified that when she was scrubbing the walls in her bathroom her hand went through the board and she observed that the wood behind the wall panel was heavily damaged by termites.

By points 3, 4, and 6, appellants assert that the jury's answers to special issues numbers 5, 6, and 12 are so contrary to the

great weight and preponderance of the evidence as to be manifestly unjust.

These issues and the answers thereto read:

SPECIAL ISSUE NO. 5:

Do you find from a preponderance of the evidence that on or before May 10, 1984, the Defendants failed to disclose to Daphne G.T. Pensabene and Constance Troulinos that the house they were buying had a termite infestation? You are instructed that in connection with this special issue, a person fails to disclose information only when (1) the information was known to that person at the time of the transaction, (2) the failure to disclose was intended to induce Plaintiffs into the transaction in question, and (3) Plaintiffs would not have entered into the transaction in question if the information had been disclosed.

Answer "We do" or "We do not."

ANSWER: We do.

SPECIAL ISSUE NO. 6:

Do you find from a preponderance of the evidence that this act of the Defendants was a producing cause of damage which adversely affected the Plaintiffs?

Answer "We do" or "We do not."

ANSWER: We do.

SPECIAL ISSUE NO. 12:

Do you find from a preponderance of the evidence that Defendant knowingly made the representations, if any, asked about in Issues No. 1, 3, 5, and 7?

You are instructed that "knowingly" means actual awareness of the falsity or deception, if any, of the representations made by Defendants, if any, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Answer "We do" or "We do not."

ANSWER: We do.

Appellee Troulinos testified that she had worked part-time for some eight to ten years as a real estate salesperson in Houston and that she was aware of the damage termites can cause to homes. She also testified that during the time she worked in the real estate business in Houston she was aware that requiring inspections of properties offered for sale and the procuring of a certificate that the properties are not termite-infested were sound business policies. She testified that she wanted the house in question inspected for the presence of termite activity or damages and a termite certificate issued on the basis thereof showing that the house was not infested with these insects.

■ Appellants contend in their argument under their third point that Troulinos' testimony, summarized above, shows that appellees relied *solely* on the pre-sale termite report signed by King that the house was not visibly infested with termites. Therefore, appellees did not produce sufficient evidence to prove that any of the representations made by Dr. Liptak or appellants' failure to disclose the "termite infestation," found by the jury in answer to special issue number 5, was a producing cause of appellees' damages. This argument strongly implies that the incorrect report by King constituted the *sole* producing cause of the damages. We do not agree with that essay of the evidence. This argument overlooks the appellees' testimonies that if appellants had disclosed that the house was so infested they would not have purchased the property. Granting that under the record the incorrect report of King was *a* producing cause, we nevertheless conclude that the evidence supports the jury finding in response to special issue number 6 that the appellants' failure to disclose the infestation was likewise a producing cause of appellees' damages. Further, after reviewing and carefully reweighing all of the evidence, we conclude that this finding is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Point 3 is overruled.

■ Appellants correctly argue under their fourth and sixth points of error that

the findings made in response to special issue numbers 5 and 12 rest solely on circumstantial evidence. There is no direct evidence that either appellant had knowledge of the termite problem in the house. However, the evidence already discussed clearly presents circumstances and establishes facts tending to prove that appellants had knowledge of the termite infestation before the date of the sale. The jury was entitled to weigh the circumstances and facts established and the reasonable inferences arising therefrom, as well as to weigh and consider the testimonies of the appellants and to judge the credibility of the witnesses. The jury rejected the testimonies of appellants that they had no knowledge, until after the sale, of the presence of termite infestation in the house. Further, based on the circumstances and facts shown by the evidence, the jury found that appellants had knowledge at the time of the sale of the infestation, that they failed to disclose the information to the appellees in order to induce the appellees to purchase the property, and that appellees would not have purchased the house had they been aware of the termite problems. Again, we have carefully reviewed and reweighed the evidence, and we conclude that the findings in response to special issue numbers 5 and 12 are not contrary to the great weight and preponderance of the evidence to such an extent that the findings are manifestly unjust. Points 4 and 6 are overruled.

Appellants claim by their seventh point of error that the court erred in overruling their objection "to the testimony of William Routon (appellees' expert witness) concerning a reasonable attorney's fee."

The objection reads as follows:

"Your Honor, I would like to ... enter an objection to his [Routon's] response in that Mr. Routon has testified that he has based his opinion on information and discussions which were furnished to him outside the courtroom. So, he is basing his opinion on hearsay evidence, which the jury has not had the benefit of knowing what items of work were done, whether they were necessary or not. So unless those items of work are actually introduced into evidence as having, in fact, been done, I object to his opinion."

Routon testified that in his opinion a reasonable attorney's fee for appellees was $8,000.00. He based his opinion in part on detailed "time sheets" supplied to him by appellees' counsel, the pleadings in the case, discussions of the case with counsel, and, of course, his own expert knowledge in the field of deceptive trade practices.

In *Moore v. Grantham*, 599 S.W.2d 287 (Tex.1980), the court observed that for many years, the Texas rule regarding expert opinion was that the opinion could not be based solely on "statements or reports of third persons, unless those statements are properly in evidence and the opinion is sought through hypothetical questions." *Id.* at 289. Judge Greenhill, writing for a unanimous court, then stated that the rule had been relaxed so as to admit expert opinion based *partially* on hearsay, but pointed out that the Supreme Court had never adopted "a rule permitting an expert's opinion testimony to be based *solely* on hearsay." (Emphasis in original.)

We conclude that Tex.R.Evid. 702 and 703,[2] promulgated by our Supreme Court, effective September 1, 1983, overturned the decision in *Moore* and like holdings in other Supreme Court cases.

The evidence reveals that Routon, whose qualifications were unchallenged, based his opinion in part on his discussions with appellees' counsel and time sheets furnished by appellees' counsel showing that appellees' counsel had devoted 100 hours to the case before trial. We take judicial no-

---

2. All references to Rules are to the Texas Rules of Evidence. Rule 703 reads, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or be-fore the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

tice that this hearsay evidence is of a type relied upon by the attorney expert in forming an opinion upon the subject of reasonable attorneys' fees. Routon's opinion is therefore admissible under Rule 703. The opinion testimony provides ample support for the jury's finding that $5,500 was reasonable attorneys' fees for the services of appellees' counsel in initiating and prosecuting this cause. The point of error is overruled.

In the eighth point of error, appellants allege that the court erred in submitting Special Issue 10 [3] because no evidence was produced showing that "the costs to repair the house was [sic] reasonable and necessary."

Appellees presented three expert witnesses, each of whom estimated the cost of repairing the termite-damaged house. Harry Joseph Gibbons, a home-builder and remodeler, testified that the house had been extensively damaged by termites, but that it was difficult to determine the full extent of that damage. He described what preliminary work would be required to reveal the full extent of the damages. He also testified the repairs to the house would be a major undertaking and candidly stated the cost of such repairs could range from $25,000 to $50,000 according to his best estimate.

Tom Severson, a contractor, testified that his inspection of the house revealed extensive termite damages which had produced some structural weakness to the house. He testified that the repairs would cost an "absolute minimum" of $35,000 and could run as high as $55,000.

Paul Montandon, another contractor, who specializes in remodeling and repair work on homes, testified that because of the termite infestation the house had sustained "extensive structural damage to the exterior walls on the back of the house." Montandon also stated, in effect, that it is difficult to estimate the cost of repairing termite damage because "you can't tell exactly what you have until you tear it all out." Montandon estimated the cost of repairs would "conservatively" amount to "about $40,000."

The gist of appellants' argument under point 8 is that none of the three expert witnesses "testified that his cost estimate was 'reasonable and necessary.'"

█ It is doubtless true that the rule in this State is that a party seeking to recover damages measured by the cost of repair to a building must present competent testimony so that the trier of the fact is justified in finding that the repairs to the building are necessary to restore the property to its former condition [4] and that the cost of the repairs is reasonable and fair. *Stafford v. Thornton*, 420 S.W.2d 153, 160 (Tex.Civ. App.—Amarillo 1967, writ ref'd n.r.e.); *cf. Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127, 129 (1950).

█ In the case before us, three qualified expert witnesses who had inspected the house pointed out in their testimony the damages done to the house by termites, and each gave his opinion as to what the repairs would cost. The fact that none of these witnesses expressly testified that his estimate of the cost of repairs was "reasonable and necessary" does not fatally flaw this evidence. *English v. Fischer*, 649 S.W.2d 83, 91–92 (Tex.App.—Corpus Christi 1982), *rev'd on other grounds*, 660 S.W.2d 521 (Tex.1983).

Looking only to the evidence and the reasonable inferences arising therefrom favorable to the jury's finding of damages,[5] we conclude there is evidence of probative force to support the finding of the jury in

---

3. Special Issue No. 10 reads:
   What sum of money, if paid now in cash, would fairly and reasonably compensate plaintiff for the reasonable and necessary cost to repair the house.
   ANSWER IN DOLLARS AND CENTS, IF ANY.
   ANSWER: $45,000.00.

4. As it existed before the damage or injury.

5. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)

response to Special Issue 10. The point of error is overruled.

The jury findings, upheld by our rulings on the points of error already discussed, support the judgment and thus are dispositive of the appeal. We need not address points 1, 2, and 5.

The judgment is affirmed.